J. J. WELLS et al., Appellees, v. COUNTY OF BOONE, IOWA, et al., Interveners and Appellants.

COUNTIES:  Bonds—Submission of Question—Matters Which May
1  Be Omitted.  Secs. 443-450, Code, 1897, covering the manner of submitting questions to a vote of the people and requiring that "the whole question" shall be submitted, neither contemplates nor requires that each and every detail of the question be submitted to the people.  Some matters must necessarily be left to the financial agents of the county.  For instance, on the question whether a county shall issue bonds for a courthouse, neither (a) the denomination of the bonds nor (b) the rate of interest thereon need be submitted to the people.

COUNTIES:  Proposition to Levy Tax—"Time" Tax Becomes Ef-
2  fective—Sufficiency of Proposition Submitted.  "The time of the taking effect" of a tax in aid of the building of a courthouse, within the meaning of Sec. 446, Sup. Code, 1913, is sufficiently stated in the proposition submitted to the voters by a provision that said tax shall be levied "year by year . . . until said bonds and interest are completely paid."

COUNTIES:  Erecting Courthouse—Contract—Validity—Competitive
3  Bidding—Fraud.  The contract for drawing the plans for a con-

templated courthouse is not rendered invalid because of the insertion therein of a provision giving the draftsman the right to bid on such construction and providing that, if he was awarded the contract, the cost of the plans should be included in and made a part of the cost of erection, no fraud being claimed and no impediment to competitive bidding being shown.

**COUNTIES:** Courthouse Site—Discretionary Powers of Board. The wide discretionary powers of the board of supervisors in the selection of a site for a courthouse will not be interfered with in the absence of some showing of a wanton or unreasonable exercise of the power.

*Appeal from Boone District Court.*—HON. J. L. KAMRAR, Judge.

WEDNESDAY, JUNE 23, 1915.

REHEARING DENIED FRIDAY, SEPTEMBER 24, 1915.

ACTION to enjoin defendant county and its board of supervisors from erecting a courthouse and issuing bonds in the sum of $200,000 to pay for the same. Judgment and decree in the lower court for the plaintiffs. Defendants appeal.—*Reversed.*

*Parker, Parrish & Miller* and *Goodykoontz & Mahoney,* for appellees.

*Frank Hollingsworth,* County Attorney.

*Whitaker & Snell,* for defendants and appellants.

*Read & Read,* for interveners and appellants.

GAYNOR, J.—The plaintiffs are residents and taxpayers of Boone county. The defendants are the board of supervisors, the members of the board, the treasurer and auditor of the county. The action is: (1) To enjoin the defendants from issuing and selling bonds for the erection of a new courthouse; (2) from carrying out a contract for the removal of the old courthouse to a different location on the

lot that it now occupies to make room for the erection of the new courthouse; (3) from carrying out the terms and provisions of a certain contract made with the Fall City Construction Company for furnishing plans and specifications for the new courthouse; (4) from selecting as a site for such new courthouse the site now occupied by the old courthouse; (5) to enjoin the county auditor from issuing warrants for any expense incurred in respect to the above matters; (6) to enjoin the treasurer from paying any such warrants.

Upon a hearing in the district court, a permanent injunction was issued enjoining the defendants as prayed. From the decree so entered, the defendants and interveners, who are also taxpayers, appeal to this court and complain: (1) That the court erred in enjoining the issuing of bonds for the purpose of obtaining money for the erection of the courthouse, and in enjoining the defendants from entering into any contract for the sale and disposition of the bonds, and in enjoining the board of supervisors from levying a tax to pay for the same, and in enjoining the defendants in respect to all the other matters hereinbefore referred to.

The record discloses that at the time of the happening of the matters hereinafter referred to, the courthouse stood at the place and on the site at which it is claimed the defendants contemplated erecting a new courthouse; that this site is in the city of Boone, the county seat of said county. Originally, the place where this courthouse was situated was known as Boonesboro, which afterwards became a ward of the city of Boone. The record discloses that in the year 1913, a petition was filed with the board of supervisors, asking for a submission to the people of the county of a proposition to bond the county for the erection of a new courthouse; that thereafter the board of supervisors, at a regular session, passed a resolution calling a special election of the voters of the county for the 2d day of September, 1913, to vote upon the proposition as to whether the county should

construct a new courthouse, borrow money for that purpose by the issuance of bonds in the sum of $200,000, and thereafter published notice of the special election to be held on that date, for that purpose. The election was held, and the proposition submitted was carried by a large majority. Thereafter, the board of supervisors, acting for the county, proceeded to carry out the wish of the people as expressed in said election, and proceeded to make arrangements for plans and specifications for a new courthouse, and for the issuing of bonds, and thereupon made the contract complained of with the Fall City Construction Company to prepare plans and specifications for the courthouse, and called for bids for the erection of a new courthouse, and entered into a contract for the removal of the old courthouse to another place on the lot then occupied by this old courthouse. The resolution passed by the board was dated June 16, 1913, and read as follows:

"Be it resolved by the board of supervisors of the county of Boone in the state of Iowa, that a special election of the county of Boone in the state of Iowa, be and the same is hereby called to be held on the 2d day of September, 1913, at which election there will be submitted to voters of said county, to be by them voted upon, the following proposition: Shall the county of Boone, in the state of Iowa, construct a new courthouse, and borrow money by the issuance of bonds in the sum of two hundred thousand dollars to pay the cost thereof, and levy a tax on all the taxable property within the county, at a rate not to exceed 1.6 mills on the dollar of the taxable value, in addition to all other taxes, year by year to pay said bonds and the interest, until said bonds and the interest thereon are completely paid."

The notice published was in the following words and figures, and, in addition thereto, fixed the respective polling places in each voting precinct:

"Public notice is hereby given that a special election of the county of Boone, in the state of Iowa, will be held on the 2d day of September, 1913, at which election there will be submitted to the voters of said county to be by them voted upon, the following proposition: Shall the county of Boone, in the state of Iowa, construct a new courthouse, and borrow money by the issuance of bonds in the sum of $200,000 to pay the cost thereof, and levy a tax on all the taxable property within said county, at a rate not to exceed 1.6 mills on the dollar of the taxable value, in addition to all other taxes, year by year, to pay said bonds and the interest, until said bonds and the interest thereon are completely paid? The polls for said election will be open from eight o'clock A. M. until seven o'clock P. M., except that within the city of Boone, the polls will be open from seven o'clock A. M. until seven o'clock P. M."

Plaintiff's contention is that the resolution and notice do not comply with the requirements of the statute in the following particulars: (1) That the denomination of the bonds and proposed rate of interest are omitted; (2) the time when the tax shall take effect or is to be levied is omitted; and, therefore, the submission upon the resolution and notice was illegal, and any action on the part of the county, under such resolution, was without authority of law, and was properly enjoined.

1. COUNTIES: bonds: submission of question: matters which may be omitted.

The provisions of the Code which we deem necessary to be considered in determining this first question are as follows:

Sec. 443 of the Code of 1897 provides, among other things, that the board of supervisors may submit to the people of the county at any regular election, or at any special one called for that purpose, the question whether money may be borrowed to aid in the erection of any public buildings. It will be noticed from this section that if the board of super-

visors contemplate the erection of any public building, they may call a special election and have the question submitted to the people for their determination. The consent of the electors is only necessary when the probable cost will exceed $5,000.

Sec. 423, Code Sup. 1913, provides that "the board of supervisors shall not order the erection of a courthouse . . . when the probable cost will exceed $5,000 . . . until a proposition therefor shall have been first submitted to the legal voters of the county, and voted for by a majority of all persons voting for and against such proposition."

The amount to be expended in the erection of this courthouse in controversy exceeds the statutory limit, and therefore it was necessary that it be submitted to the people for their determination. About this, there is no controversy in this case. Before, however, the matter is submitted to the people for their determination, a proposition to that effect must be made by the board of supervisors, and notice of the same given for thirty days previous to the day fixed for the election in a newspaper, if one is published in the county; otherwise, by posting notices as required in Sec. 423.

Sec. 445, Code, provides that after the proposition has been made by the board of supervisors, and a special election called for the purpose of ascertaining the will of the people touching the proposition, and the thirty days' notice has been given as required, and such election held and a majority of the electors voting thereon vote in favor of the proposition, it shall be effectual in conferring authority upon the board to do as contemplated in the resolution.

Sec. 446, Code Sup. 1913, relates to the manner of submitting this question to the people, and reads as follows: "The whole question, including the sum desired to be raised, or the amount of tax desired to be levied, or the rate per annum, and the whole regulation, including the time of its taking effect or having operation, if it be of a nature to be set forth . . . shall be published once each week for at

least four weeks in some newspaper printed in the county."
The notice "must name the time when such question will be
voted upon, and the form in which the question shall be
taken."

Sec. 447, Code, provides: "When any question submitted
involves the borrowing or expenditure of money, the proposi-
tion of the question must be accompanied by a provision to
lay a tax for the payment thereof, in addition to the usual
taxes, . . . and no vote adopting the question proposed
will be of effect unless it adopt the tax also."

Sec. 448, Code, provides: "When the object is to borrow
money for the erection of public buildings, . . . the rate
shall be such as to pay the debt in a period not exceeding
ten years; but in counties having a population of forty
thousand or over, and where it is proposed to expend $100,000
or over, the rate of levy shall be such as to pay the debt in
not exceeding twenty-five years. In issuing bonds for such
indebtedness, when voted, the board of supervisors may
cause portions of said bonds to become due at different
definite periods. But none of such bonds so issued shall be
due and payable in less than five or more than twenty-five
years from date."

Sec. 449, Code, provides: "When it is supposed that
the levy of one year will not pay the entire amount, the
proposition and the vote must be to continue the proposed
rate from year to year until the amount is paid."

Sec. 450, Code, provides: "The board of supervisors, on
being satisfied that the above requirements have been com-
plied with, and that a majority of the votes were cast in
favor of the proposition, shall cause the same and the result
of the vote to be entered at large in the minute book, and the
proposition shall take effect and be in force thereafter."

Summarizing these statutes, we find that the board of
supervisors are by law made the financial agents of the county,
and of the people of the county in respect to the management
of the business of the county. Their powers to act for the

county are defined by statute, and, though defined, are, in some instances, limited by statute. In treating of the power and authority of the board to act for the county, we speak now with reference to the matter here under consideration, and do not attempt or intend to discuss the general powers of the board in its relationship to the county and its affairs. We assume that it will not be controverted that the board of supervisors had power to order the erection of a courthouse where the cost did not exceed five thousand dollars; that when the board of supervisors contemplated the erection of a courthouse, the probable cost of which would exceed five thousand dollars, it had no authority to order its erection until a proposition therefor had been submitted to the legal voters of the county, and a majority of the persons voting upon the question had voted in favor of so doing. When the electors have ratified a proposition of that sort made to them by the board of supervisors, then the board of supervisors is invested with plenary power to carry out the proposition.

The statutes, however, for the purpose of securing the fullest expression of the people upon the proposition, have provided that notice shall be given to the people of the time at which they may express themselves for or against the proposition. When a proposition has been fairly, fully, and intelligently made to the people, so that the intent, purpose, and object of the proposition, or what the board proposes to do, is made fully apparent in the proposition itself, and the people have had the statutory notice of the time at which an opportunity is given them to ratify or reject it, and they have ratified or rejected it, their action is binding upon the board, and on all the taxpayers of the county.

The building of public buildings involves necessarily the expenditure of county funds. These funds are raised through taxes levied upon the property of the people within the county. Even though the taxes had been levied and collected and the money were in the treasury, the board of supervisors

would have no authority to expend more than five thousand dollars of the fund so in the treasury, in the erection of a courthouse, without the consent of the people, expressed at a special or general election.  If the fund is not in the treasury of the county to meet an expenditure of that kind, and it is the purpose of the board to borrow money for the erection of the courthouse, the very proposition itself contemplates the repayment of the money so borrowed.  This repayment can only be made by the county by the exaction of moneys from the people, through the instrumentality of taxation. Hence Sec. 447 provides that when the question or proposition involves the borrowing or expenditure of money, the proposition must be accompanied by a provision to lay a tax for the payment thereof, a tax in addition to the usual tax, and for that purpose only.

Sec. 448 does not attempt to fix by its terms the rate of taxation which can be fixed by the board of supervisors for the purpose of discharging the obligation assumed in the borrowing of the money.  It says that when the object is to borrow money for the erection of a public building, the rate shall be such as to pay the debt in a period therein limited, and in issuing bonds for such indebtedness, when the people shall authorize the creation of the debt, the board may cause the bonds to become due at different definite periods, limiting the time when they become due and payable to not less than five or more than twenty-five years from the date.  This then, becomes a matter of computation for the board in issuing the bonds, and the levy fixed by the board must be such as is most likely to accomplish the payment of the indebtedness assumed within the time limited.

Sec. 449 provides that when it is contemplated to borrow money for the erection of a public building, and it is apparent that the levy of one year will not pay the entire amount borrowed, the proposition and the vote must be that the levy fixed be continued from year to year until the full amount is paid.

Turning now to the resolutions and the notice hereinbefore set out, and construing them in the light of the statutes hereinbefore referred to, we find that the resolution provided that a special election be held for the purpose of submitting to the people the question whether or not the county should erect a new courthouse and borrow money to that end by the issuance of bonds; that a date was fixed for the election by the resolution or proposition; that the proposition made in the resolution was to borrow two hundred thousand dollars to pay the cost of the construction of such courthouse; that the proposition was to levy a tax of 1.6 mills on the dollar of the taxable value of the property, in addition to all other taxes, for the purpose of repaying the money borrowed for the erection of such courthouse; that the proposition contemplated that this levy be made year by year until the bonds and interest were paid.

The proposition contemplated the erection of a new courthouse. It contemplated the borrowing of two hundred thousand dollars to be used for that purpose. This was what the resolution proposed, and this is what the board of supervisors desired to do. This proposition was submitted to the people; was voted for and approved by the people. Such election was called by the board for the purpose of enabling the people to express themselves upon the question, and notice contemplated by Sec. 423 was given. In fact, it would seem that, up to this point, all the requirements of Secs. 423 and 443 had been complied with. The proposition involved the borrowing of money. The proposition of the board, of which due notice was given to the electors, was to borrow money for the purpose of erecting a courthouse. This proposition was accompanied by a provision in the proposition itself to levy a tax for the payment of the money so borrowed. The amount of tax to be levied was fixed in the resolution and in the notice published. The proposition to erect the courthouse, the proposition to borrow the money, the proposition to levy a tax at the rate fixed in the resolution and notice,

were ratified by the electors at this special election. If it be conceded that this was the whole question, then it was fully submitted to the people and the people had due notice of the question, to wit, to erect a new courthouse, to borrow two hundred thousand dollars for that purpose, and to levy a tax on the taxable property within the county for the purpose of repaying the money so borrowed.

But it is contended that neither the resolution nor the notice informed the people as to the time of its taking effect or having operation, as required by Sec. 446, and that there-

2. COUNTIES:
proposition to
levy tax:
"time" tax be-
comes effect-
ive: sufficiency
of proposition
submitted.

fore the whole proposition was not submitted to the people for their approval or ratification. Sec. 446 provides for the manner of submitting questions to a vote of the people. Many questions may be submitted to a vote of the people, and the provisions of this statute must be construed with reference to the particular matter to be submitted; and where the statute says the whole regulation shall be submitted, it undoubtedly means the whole question and the whole regulation touching which the people are called upon to express themselves. The whole question and the whole regulation here, upon which the people were entitled to be heard, was, Shall a courthouse be erected for Boone county at an expense of two hundred thousand dollars, and shall money be borrowed by issuing bonds to that amount to pay the cost thereof, and shall a levy be made upon the taxable property within the county, at a rate of 1.6 mills on the dollar to pay bonds and interest, and shall this levy be made year by year thereafter? The denomination of the bonds and the rate of interest they should bear was not a matter that could be determined by the board and set forth in the resolution or in the notice; for that is a matter of detail work in carrying out the wish of the people, and depends upon the market, the demand for the bonds, and many other contingencies.

Sec. 409 of the Code provides: "In all counties wherein

county bonds are issued in pursuance of a vote of the people to obtain money for the erection of any public building, and wherein the annual tax named in the proposition so submitted to the people for the purpose of paying the annual interest accruing upon such bonds is insufficient to pay the same as it matures, the boards of supervisors are authorized to levy for said purpose, and no other, a tax, not exceeding one mill on the dollar, until said bonds are paid; but this provision shall not prevent the levy of a greater tax than above mentioned, if any such proposition authorized such higher levy.''

The next contention is that the resolution and notice did not fix the time when the tax should take effect or be levied. This criticism, we think, is wholly without merit. It fixed the annual levy of the tax and provided that it should be levied year by year thereafter until the full amount of the indebtedness and interest was paid. How this could be made more definite does not occur to us at this time.

We are cited to many authorities claimed to have some bearing upon the question here under consideration. We have examined these authorities, and do not find in them any substantial aid in the solution of the question herein submitted. The levy of the tax was an incident to the authority given to the board by the people to erect this new courthouse and contract an indebtedness for that purpose. The payment of interest was an incident to the authority, and we think was fully covered by the resolution, in so far as it was necessary that there be authority conferred upon the board by a vote of the people. We think the proposition was fully and fairly submitted to the electors of Boone county and was fully ratified by them, and conferred upon the board authority to do as contemplated in the resolution, and that the court below erred in holding to the contrary.

It is next contended that the moving of the old courthouse and fitting it up on the temporary site for the use of the county, pending the erection of the new courthouse, con-

templated the incurring of an expense on the part of the board of supervisors in violation of the provisions of Sec. 423 of the Code of 1897, in which it is said: "The board of supervisors shall not order the erection of a courthouse when the probable cost will exceed five thousand dollars." Disposing of this question, we have simply to say that we think that the great preponderance of the evidence shows that the expense would not exceed the inhibition of the statute, and we do not, therefore, discuss or consider the other reasons alleged against the action of the board in this respect.

It is next contended that, inasmuch as the Fall City Construction Company had been employed by the board to prepare the plans and specifications for the erection of the

3. COUNTIES: erecting courthouse: contract: validity: competitive bidding: fraud.

new courthouse, with an agreement to pay them a thousand dollars therefor, such contract was void for the reason that there was inserted in said contract a clause to the effect that the Fall City Construction Company might become a bidder for the erection of the courthouse, and that in the event they were successful in bidding, the one thousand dollars should be included in and made a part of the contract price of erection. It is not claimed that there was any fraud practiced in this respect, nor is it shown that the fact in any way prevented competitive bidding. We think there is nothing in this contention, and that the court erred in holding that this contract was void because of the insertion of this provision in the contract.

The last question relates to the selection of the old site as a site for the new courthouse. It appears that the court had been carried on at this old site for fifty years; that the

4. COUNTIES: courthouse site: discretionary powers of board.

board contemplated erecting the new courthouse on the exact site of the old one. It appears that the county owned this site. It does not appear that it owned any other real estate on which a courthouse could be erected. It is claimed by the plaintiffs that this site is inaccessible; that the location

is not convenient for the general public. The general discretionary powers of the board are not questioned in the selection of a site for a courthouse. We think that this was largely a matter of discretion on the part of the board. We think there was no evidence of any abuse of discretion which would justify the interference of a court of equity, and we think the court below erred in sustaining plaintiffs' contention on this point. The action of the board involved no wanton or unreasonable exercise of power. Nor do we think that this location is detrimental to the public interest, such as might invoke our equitable jurisdiction.

We think that the court erred in sustaining plaintiffs' contention upon any of the points urged, and the case is therefore reversed and remanded with direction to dismiss plaintiffs' petition.—*Reversed.*

DEEMER, C. J., LADD and SALINGER, JJ., concur.