E. M. S. McLaughlin, Appellee, v. City of Newton et al., Appellants.

MUNICIPAL CORPORATIONS: Notice of Election in re Granting
1 of Franchise. A notice of election to vote on the approval of a duly enacted ordinance granting a public utility franchise to a private party is sufficient if the *substance* of the proposed ordinance is set forth in the said notice. (Sec. 721, Code Supp., 1913.)

MUNICIPAL CORPORATIONS: Ballot in re Election on Fran-
2 chise Ordinance. The ballot used at an election to vote on the approval of a proposed ordinance granting a public utility franchise must have printed thereon the ordinance *in full*. (Sec. 1106, Code Supp., 1913.)

    Salinger, J., dissents.

MUNICIPAL CORPORATIONS: Ballot in re Election on Fran-
3 chise Ordinance. The ballot used at a *special* election to vote on the approval of a proposed ordinance granting a public utility franchise need not be printed on *yellow* paper, as required by the statute. (Sec. 1106, Code Supp., 1913.)

MUNICIPAL CORPORATIONS: Franchise Election—Different but
4 Related Propositions on Separate Ballots. The requirement that different propositions relating to public measures, submitted to the people for approval or disapproval at the same election, be printed on the *same* ballot, even when the propositions are directly related, is held *not* mandatory. It is plainly stated, however, that the better practice would be to comply with the strict letter of the statute.

*Appeal from Jasper District Court.*—D. W. Hamilton, Judge.

July 20, 1920.

Action in equity to enjoin the defendant city and A. H. Rich, proposed grantee of an electric franchise, from pro-

ceeding under ordinances duly passed by the city council, granting to Rich a franchise to operate an electric light plant within the corporate limits of the city. The injunction was granted by the court on the theory that the election returns did not affirmatively show an approval by a majority vote of the electors, because the ballots used did not state the proposition in full, to which the voter was asked to give his consent, as required by Section 1106 of the Code Supplement of 1913, and it did not appear, therefore, that a majority had authorized the proposed action. Defendant appeals.—*Affirmed.*

*J. E. Cross* and *George E. Campbell,* for appellants.

*Stipp, Perry, Bannister & Starzinger* and *E. O. Korf,* for appellees.

GAYNOR, J.—I. This action is brought by a resident taxpayer of the city of Newton. Its purpose is to restrain the mayor and city council and one A. H. Rich from proceeding

1. MUNICIPAL CORPORATIONS: notice of election *in re* granting of franchise.

under, or in any manner carrying into effect, two certain ordinances, hereinafter referred to, regularly passed by the city council, and submitted to the electors for their approval at a special meeting called for that purpose, and, on the face of the record, approved by a large majority. The council proposed, in one of the ordinances, to grant to the defendant A. H. Rich a franchise for an electric light, heating, and power plant, to be constructed and operated in the defendant city; and by the other to sell to Rich a certain municipal plant, then owned and operated by the city. The scheme of the two ordinances apparently was to pass to defendant Rich all the right, title, and interest of the defendant city in the old plant, for a consideration named, and, when this was done, to grant to him a franchise to erect and maintain and operate another plant in the city for the same purpose. The first ordinance is known as No. 185, and by it the city proposed, subject to the approval of the electors of

the city, to grant to Rich, his heirs, successors, and assigns, the right to maintain and operate in the city of Newton a plant for the production, transmission, and sale of electric current for light, power, and heat for a term of 25 years, subject, however, to a condition expressed therein in what is known as Ordinance 187, to wit, that Rich purchase the old plant at a consideration named. It appears that the old plant had become antiquated, and did not furnish such service as the city required, and it was the thought of the city council to sell the old plant to Rich, and grant to him the right to furnish fuller and better service than could be had through the plant then owned by the city.

We will not set out these ordinances in full in this opinion. They are long. Ordinance 185 contains 23 sections. The legality of the ordinances is not called in question. Ordinance 185 provided, among other things, that it should not become effectual unless the proposition to sell to Rich should be approved by a majority of the legal voters of the city. It was further provided that the two propositions should be submitted to the legal voters of the city at a special election, to be held on the 3d day of May, 1920, under a proclamation to be issued by the mayor, to be published in two newspapers published in the city, for at least four consecutive weeks before the election; and further, that, in the event the ordinances were approved by the electors, they should not become effectual unless Rich, within five days thereafter, accepted the terms and conditions of the franchise ordinance; and that neither proposition should become effectual unless both were approved. Notice was given, and the city undertook to submit to the voters of the city the propositions contained in the two ordinances, for their approval. The election was called for and held on the 3d day of May, 1920. At that election, the record shows that, on the proposition to sell the old plant, there was an affirmative vote of 895, against a negative vote of 459, a total vote on this proposition of 1,354. On the proposition to grant the franchise, there were 911 affirmative votes against 433 negative votes, making a total vote on the proposition of 1,344

votes. The total voting population of Newton at that time was about 1,400. So it appears on the face of the record that both propositions carried by a large majority.

The injunction is sought on the following grounds:

First. That the notice of election was insufficient, in that it did not have set out in full the proposed ordinance or public measures. It is not contended that, if the notices were sufficient in substance, the council did not comply, in all other respects, with the requirements of the statute as to publication.

Second. It is contended that the *ballot* did not have printed thereon *in full* the proposed ordinances or measures, as required by Section 1106 of the Code Supplement of 1913.

Third. That the ballots were not printed on yellow paper, as required by said section.

Fourth. That the two propositions were printed on separate ballots, when they should have been printed upon the same ballot, as required by the said section.

So it is apparent that the injunction is sought on two grounds: (1) That the notice of election given was insufficient in substance; and (2) that the ballots did not conform to the requirements of the statute, in character, form, and substance.

It is true, as contended by the plaintiff, that the notice of the election, as published, did not contain the ordinances in full, but it does appear that the purpose of the election and the measures that the electors were required to pass upon were, in substance, set out in the notice.

The power to purchase, establish, erect, maintain, and operate an electric light or electric power plant is found in Section 720 of the Supplement to the Code, 1913. This section provides that they (meaning the city council) may grant to individuals or private corporations the authority to erect and maintain such works or plants for a term of not more than 25 years, and also provides that this authority shall not be exercised unless a majority of the legal electors voting thereon declare in favor of the same, at a general,

city, or special election, called for that purpose. It is apparent that the power to grant to Rich the right to erect and maintain the plant in question existed, and that the city council attempted to exercise it, and that the ordinance was passed in pursuance of the authority granted. This authority, though it existed, did not and could not become effectual to bind the city or inhabitants until its exercise was approved by the electors of the city. It appears that, following strictly the requirements of the statute, the city council attempted to exercise the power granted, and passed and published the ordinances in due form, before the election was called. No question is made upon this point. After the ordinances had been passed, the election was called, the matter submitted to the voters for their approval, and a vote taken. There is no question as to the sufficiency of the notice to invoke an expression of the will of the people, except as hereinbefore set out. Our statute does. not prescribe the form of notice, nor does it attempt to say what the notice shall contain. Section 721, Code Supplement, 1913, reads:

"Notice of such election shall be given in two newspapers published in said city or town, if there are two, if not, then in one, once each week for at least four consecutive weeks."

This was done, and it appears that the council ordered the question submitted at the special election called for that purpose. The notice published contained the substance of what the council proposed to do, and fixed the time and place at which the elector might express his. approval or disapproval, and referred the voters to the ordinance which. had been passed, published, and recorded, for a fuller expression of the city's purpose and what it proposed to do. There was not only an official publication for four weeks, as required by the statute, but an unofficial publication in papers of general circulation in. the city. It further appears that the matter of granting the franchise and selling the old plant had been fully and freely discussed in the city for many weeks before the election. Public meetings were held in many places in the city, to which the voters were invited,

and at which the merits and demerits of the proposed action of the city were fully and freely discussed. We do not mean to be understood as saying that this method of giving notice to the people of the proposed action of the city council can be substituted for the statutory requirements. The ordinances, reciting fully what the council proposed to do, were officially published, published in conformity with the statute, and notified the people of the contemplated action of the city, touching the matter now in controversy; and the notice of election made reference to the proceedings of the city council touching its proposed action, as the same appeared of record. Inasmuch as the city council had taken action before the election was called, and its purpose was embodied in ordinances duly framed, considered, and passed by the council, and inasmuch as these ordinances had been fully published, as required by statute, and made a matter of record in the office of the city clerk, in the proper books of the city, kept for that purpose, and inasmuch as the notice calling upon the people to express their approval or disapproval of the action of the city fixed the time when and the place where the people could assemble for that purpose, and inasmuch as the notice gave the substance of what the city proposed to do, we cannot say that the notice was insufficient to make effectual the very purpose for which the notice was required. The statute, as we said before, does not fix the form of notice, or say what it must contain. It simply says that the council may order any of the questions provided for in Section 720 submitted to a vote, at an election specially called for that purpose, and then says:

"Notice of such election shall be given in two newspapers published in said city or town, if there are two, if not, then in one, once each week for at least four consecutive weeks."

It appears that almost the entire voting population of the city appeared at the election, in pursuance of the notice, and expressed themselves for or against the proposition. Although we have no authorities in this state bearing diectly upon the question here under consideration, we have to say that, in our opinion, the notice was effectual for the

purposes for which the notice is required, and no prejudice could result from a failure to give a fuller notice than that which was actually given, as shown by the record in this case. As bearing upon this question, however, see *Hall v. City of Cedar Rapids,* 115 Iowa 199, and cases therein cited; *Goerdt v. Trumm,* 118 Iowa 207; *Lehigh S. P. & T. Co. v. Incorporated Town of Lehigh,* 156 Iowa 386; *Wells v. County of Boone,* 171 Iowa 377.

Plaintiff's contention cannot be sustained on the ground of insufficiency of notice.

II. It is next contended that the ballots furnished the voters at the election, and used by them in expressing their approval or disapproval of the ordinances, did not contain, in full, what the council proposed to do; that the ballots did not have printed on them, in full, the proposed ordinances or public measures, as required by Section 1106 of the Supplement to the Code, 1913.

2. MUNICIPAL CORPORA- TIONS: bal- lot *in re* election on franchise ordinance.

The ballot followed the notice, and set out only so much of the matter of the proposed action of the council as appeared in the notice. The section relied upon reads as follows:

"When a constitutional amendment or other public measure is to be voted upon by the electors, *it shall be printed in full* upon a separate ballot, preceded by the words 'Shall the following amendment to the Constitution (or public measure) be adopted?' and upon the right-hand margin, opposite these words, two spaces shall be left, one for votes favoring such amendment or public measure, and the other for votes opposing the same. In one of these spaces the word 'yes' or other word required by law shall be printed; in the other, the word 'no' or other word required, and to the right of each space a square shall be printed to receive the voting cross, all of which shall be substantially in the following form:

" 'Shall the following amendment to the Constitution (or public measure) be adopted?'

| "(Here insert in full the proposed | Yes | |
|---|---|---|
| constitutional amendment or public | | |
| measure.) ..................... | No | |

"* * * If more than one constitutional amendment or public measure is to be voted upon, they shall be printed upon the same ballot, one below the other, with one inch space between each constitutional amendment or public measure that is to be submitted. All of such ballots for the same polling place shall be of the same size, similarly printed, upon yellow colored paper. On the back of each such ballot shall be printed appropriate words, showing that such ballot relates to a constitutional or other question to be submitted to the electors, so as to distinguish the said ballots from the official ballot for candidates for office."

This record discloses that two ballots were furnished in this instance, one relating to the granting of the franchise, and the other to the sale of the plant then owned by the city. They were printed on white paper. In neither ballot was the proposed action of the city council set out in full. A franchise constitutes a contract. The most that the city could do would be to propose the contract, and formulate the terms and conditions upon which it was willing to enter into the contract. The proposition was to grant a franchise, which involved, when granted and accepted, mutual contractual duties and obligations, duties and obligations to be assumed by the city for and in behalf of the citizen, and duties and obligations to be assumed and performed by the grantee in the franchise. If it became effectual, it was a contract between Rich and the city, fixing and regulating the rights, duties, and obligations of each to the other for 25 years. Every detail of this contract, in so far as the ordinances were contractual, was a matter of concern to the citizens and electors of the city. When they were called to the election, it was to express their approval or disapproval of the contract proposed by the city, every detail of which, in so far as it involved contractual rights and duties, was essential to be known by the voter, before he

could intelligently approve or disapprove the same. It may be that this strictness in the form of the ballot was thought necessary to the intelligent action of the voter, when called upon to personally express his assent to or dissatisfaction therewith, and that the contract in all its fullness should be there before him. It was the first time it became a personal matter, calling on him for action. Whatever the reason for this requirement of the statute,—and many reasons might be suggested,—the legislature has seen fit to say, in no uncertain terms, that the voter shall have before him, upon the paper upon which he is required to express his approval or dissent, the entire proposition involved in his act. The city is acting under a grant of power. Without the grant of power, it could not act at all. The same authority that granted the power prescribed the manner in which it shall be exercised, and it is not for us to question its wisdom. It may be that, in the instant case, it would be a hardship upon the city and upon the taxpayers of the city to require the printing of these entire ordinances on the ballot. It may be that, under our method of voting, neither time nor opportunity would be given the elector to read, understand, digest, and fully appreciate the ordinances, in all their details. But this does not justify us in saying that he may be denied the opportunity to do so, and does not justify an act which is done in contravention of the plain provisions of the statute. Moreover, we are not in a position to know whether these electors who voted for these propositions would have voted for them, had they then before them all the conditions under which the franchise should be granted.

We therefore hold that the statute is mandatory. It provides that the proposition shall be printed in full upon the ballot. A reference to the preceding action of the board does not meet the requirements of the statute. Such provisions are generally held mandatory. It is true that, in *Rock v. Rinehart,* 88 Iowa 37, it would seem that this court held to the doctrine that, where every step necessary to submit the proposition to the voters in a legal way had been

taken, preceding the ballot, the ballot was sufficient if, from the ballot, the voter may know or readily ascertain the full scope and meaning of the proposition, by reference to other papers and proceedings. When that decision was handed down, there was no provision of the statute specifying the form of the ballot, but it was only required that it fairly and intelligently present the question to be voted upon.

The court nullified the election, and enjoined the city and Rich from proceeding under the ordinances. This was based on the thought that the action of the city council did not have the support which the statute requires it should have from the electors of the city, authorizing and justifying its action. It therefore granted an injunction, as prayed; and its action in so doing is sustained, for the reasons hereinbefore set out.

It is claimed that the ballots were insufficient, because printed upon white paper. It will be borne in mind that this was a special election. There could, therefore, be no confusion of ballots. The election was called for a specific purpose. There is no reason suggested, and none suggests itself to us, why the elector could not express himself as intelligently upon white paper as upon yellow paper. We think there is nothing in this contention.

3. Municipal Corporations: ballot in re election on franchise ordinance.

It is next contended that the election was void because the two propositions were submitted to the electors upon separate ballots. In the matter submitted to the electors, there were two propositions involved, one dependent upon the other. A ratification of one could not become effectual unless the other was ratified also by a majority of the electors. We think that the better practice would be to follow the statute, and print both propositions upon the same ballot, when one proposition is dependent on the other, to the end that the voter may have before him both propositions on the same ballot, for consideration at the same time. A majority affirmative

4. Municipal Corporations: franchise election: different but related propositions on separate ballots.

vote became effectual only when there was an affirmative majority vote on the other. We do not, however, hold the provision mandatory.

For the reasons pointed out, the action of the district court is—*Affirmed.*

Weaver, C. J., Ladd, Evans, Preston, and Stevens, JJ., concur.

Salinger, J. (dissenting). It is, of course, true that the use of the word "shall" in a statute has some tendency to prove that the statute is mandatory. On the other hand, it will not seriously be questioned that, in many cases, the statute has been held to be directory merely, though mandatory words are used. In deciding which class the statute falls into, the consequences of a given interpretation are often controlling. In the case at bar, the logic of the majority, if followed to the bitter end, creates such consequences as that I feel constrained to disagree to its position. Under its holding, a municipality may be deprived of light or water for an indefinite length of time, if election officers fail to copy a franchise ordinance upon the ballot which deals with the adoption or rejection of such ordinance. It would be wholly immaterial that every voter had carefully read and reread the ordinance before voting upon it. If, through no fault of the elector, he is not given the opportunity to reread that ordinance, and do so from his ballot and in the booth, he is powerless to cast a vote for adoption, no matter how urgently he may desire adoption. It seems to me there is much, in both reason and authority, that militates against such interpretation. The statute under consideration here is not more mandatory than, say, statutes that declare what the form of the ballot at a general election must be. Yet it has universally been held as to those that failure of the election officers to provide such a ballot would not be permitted to disfranchise the electorate. Before annulling a decisively large affirmative vote on a question upon which, in the very nature of things, the electorate must

have heard much discussion, and have had much information, and before annulling such vote upon the naked ground that the ballot itself did not contain the copy of an ordinance, it seems to me there should be some evidence these voters would have refrained from voting, or would have voted "No," had they had the ordinance before them on the ballot.

I would reverse.