M. E. O'KEEFE et al., Appellees, v. FRANK N. HOPP et al., Appellants.

No. 40011.

JANUARY 21, 1930.

REHEARING DENIED MAY 6, 1930.

*John P. Organ, John J. Hess, A. L. Preston,* and *Charles Roe,* for appellants.

*D. E. Stuart, Lynn S. Alberti,* and *Kimball, Peterson, Smith & Peterson,* for appellees.

KINDIG, J.—Nebraska is located immediately west of Iowa, and the boundary line between the two states is the Missouri River. Pottawattamie County is situated within and on the extreme western side of Iowa. Its western boundary is the Missouri River. The county seat is Council Bluffs. Across the Missouri River to the west, and directly opposite that city, is Omaha, Nebraska. Connecting the two cities, at the time involved in this litigation, was a toll bridge, owned and operated by private capital. Being desirous of constructing, maintaining, and using a free bridge across said river, on August 27, 1928, certain citizens and electors of Pottawattamie County presented to the appellant board of supervisors a petition asking that a special election be called, for the purpose, as before indicated, of submitting to the voters of that county the following proposition:

"Shall the county of Pottawattamie, in the state of Iowa, be authorized to construct and maintain a foot and wagon bridge extending from Council Bluffs in the county of Pottawattamie, in the state of Iowa, across the boundary-line river commonly known as the Missouri River, to the city of Omaha, in the county of Douglas, state of Nebraska, at a cost not to exceed $400,000 to said county of Pottawattamie, state of Iowa?"

Upon the receipt of the petition, the appellants finally denied its sufficiency, after having continued the cause from time to time. Feeling that the appellants erred in this regard, the appellees, who were among the petitioners aforesaid, commenced this action in mandamus. After a trial in the district court, that tribunal allowed the writ, and accordingly the election was called, and vote taken on the question set forth in the petition. As the result of the election, the proposition carried. Insisting, however, that the petition was entirely insufficient to authorize the election, the board of supervisors on this appeal ask for a reversal of the district court's action in the premises.

Before entering upon a discussion of the specific points involved, it is essential to consider the material statutes, appellees'

petition before the supervisors, and the findings made thereon by the board. That will be done in the order named.

In the 1927 Code, there are the following applicable sections:

"4678. Ten per cent of the legal voters, as shown by the returns of the last general election, of any county bordering upon a stream of water which forms the boundary line of this state, may petition the board of supervisors to submit to the voters the question whether such county shall be authorized to *construct and maintain* [the italics are ours] a foot and wagon bridge extending from such county across such boundary-line river. Said petition shall state the amount to be expended for *said purpose* [the italics are ours]."

"4679. The board shall submit such question at the first general election occurring not less than sixty days after the filing of said petition."

Section 4680 provides for notice.

"4681. If a majority of the voters vote in favor of such authorization, the board shall have authority to construct and maintain said bridge, and may agree with the adjoining state, or with any other municipal division thereof, as to what part of said bridge said county will construct and maintain, or as to what percentage of the cost of construction and maintenance said county shall pay, and such county shall be under no greater liability than as evidenced by such agreement."

"4682. In order to build and maintain such bridge, the board may, from year to year and on all the property in the county, levy an annual tax of not to exceed one mill. * * *" (Bonds are authorized.)

By Section 4683 a method is outlined whereby public utilities may use the bridge.

"4684. Where there is a contract for joint maintenance of the entire structure, the county's liability for such maintenance shall only extend to that part or portion which is within the boundary line of this state."

Thus authorized by statute, the appellees and others filed with the appellant board of supervisors the following petition:

"We, the undersigned, legal voters of said county of Potta-

wattamie, state of Iowa, and being in number more than ten per-cent (10%) of those voting at the last general election, do hereby state and represent that said Pottawattamie County, in the state of Iowa, borders upon a stream of water commonly known and designated as the Missouri River, which said stream of water forms the westerly boundary line of the state of Iowa and of said county of Pottawattamie in said state of Iowa, and we hereby respectfully petition, in accordance with the provisions of the statutes of the state of Iowa, the board of supervisors of said county of Pottawattamie, in the state of Iowa, to submit to the voters of said county at the next general election, to be held in said county and state on November 6, 1928, the question as to whether said county of Pottawattamie in the state of Iowa shall be authorized to construct and maintain a foot and wagon bridge extending from Council Bluffs, in said county of Pottawattamie, in the state of Iowa, to Omaha, in the county of Douglas, state of Nebraska, and across said boundary-line river commonly known and designated as the Missouri River. We further state that the total amount to be expended for the *construction* [the italics are ours] of said bridge shall not exceed $1,200,000, and that the portion of said total amount to be expended by said county of Pottawattamie, in the state of Iowa, for said purpose shall not exceed $400,000. The question we hereby petition you to submit to the voters is as follows: * * * [the proposition set forth at the beginning of the opinion]."

Acting upon that petition, under the aforesaid statutes, the board of supervisors adopted this resolution:

"Whereas, the petition purporting to be signed by electors of Pottawattamie County, asking that a certain proposition to authorize the construction and maintenance of a foot and wagon bridge between the cities of Omaha, Nebraska, and Council Bluffs, Iowa, be submitted to the electors, is so uncertain, defective, and indefinite that the question set out in the petition cannot be legally submitted to the electors, and the board has no power to order the same submitted; that the proposed bridge cannot be constructed within the limits of the taxing power of this board to pay for the same as provided by law, and that said petitions are illegal, unauthorized, and insufficient, because the board is unable to determine that the requisite number of

said petitioners are legal voters in Pottawattamie County, Iowa, and that said petitions are illegal and unauthorized by law for the purpose of constructing or aiding in the construction of such a bridge as is proposed.

"Therefore, it is resolved by the board of supervisors of Pottawattamie County, Iowa, that said question set out in the petition be not submitted to a vote of the electors; and be it further resolved that said petition be and it is hereby denied and dismissed."

I. Appellees insist that the appellants supervisors were duty-bound to consider but two questions: First, was there a sufficient number of petitioners? Second, were such petitioners legal voters of Pottawattamie County? Continuing their suggestions in this regard, the appellees argue that the appellants supervisors acted entirely under the control of owners, stockholders, and managers of the toll bridge company aforesaid, and when so doing, stepped aside from the path of official duties imposed under the circumstances.

To that phase of the controversy attention will be first directed. If the petition substantially complied with the provisions of the statute under which it was filed, the county supervisors must call the election, provided that the petitioners were sufficient in number, and legal voters of the county. *Incorporated Town of Mapleton v. Iowa L., H. & P. Co.*, 206 Iowa 9; *Iowa Pub. Serv. Co. v. Tourgee*, 208 Iowa 36.

Assuming the sufficiency of the petition, there then is imposed upon the county supervisors the same sacred duty to act legally as in meeting any other official requirement made of them by law. When performing this function, the supervisors should not evade or equivocate. Likewise, their action in this regard must not be arbitrary or captious.

II. Contending for those principles, the appellees argue that the appellants are not entitled to a reversal, because the board of supervisors did not find, first, that the signers were insufficient in number, or, second, that they were not electors. Replying to that contention, the appellants urge that the petition submitted was so insufficient and inadequate that the board of supervisors cannot be compelled by mandamus to call the election.

Manifestly, there must be a petition. Without it, the board

cannot act. Should the application submitted fall short of meeting the substantial statutory requirements, there would, in effect, be no petition. With the record thus lacking, there would be no legal authority for the board to call an election; for, under those circumstances, the attempt to have an election would be a nullity, and the official effort result in a useless expenditure of money and time. A legal petition, therefore, is essential, and without it the supervisors cannot legally, and hence need not, act.

III. Appellants assert at this juncture that appellees' petition to the supervisors was not sufficient, under the statutes above quoted. Many reasons are assigned as to why the application is inadequate. So far as this appeal is concerned, we find it necessary to consider but one of them. Reference is made to the indefiniteness and incompleteness of the petition.

It is contemplated by the statute that the bridge shall be constructed and maintained. Undoubtedly the legislators realized that construction without maintenance would be impractical and contrary to the public welfare. Maintenance, then, under the legislation, is co-ordinated with construction. Because an election is contemplated, the legislature sought to enlighten the voters concerning the amount to be expended for construction and maintenance. The words "said purpose," contained in the last sentence of Section 4678, refer back to the antecedent "construct and maintain." This being a public measure, and requiring the approval of the electorate, it is necessary for them to know the financial obligation involved. That thought is emphasized in Sections 4681 and 4682, supra, wherein the legislature declared:

"If a majority of the voters vote in favor of such authorization [to construct and maintain], the board shall have authority to construct and maintain said bridge * * *."

"In order to build and maintain such bridge, the board may, from year to year and on all the property in the county, levy an annual tax of not to exceed one mill * * *."

Wherefore, it is important for the voter to know the extent of the maximum cost, not only for construction, but maintenance, as well. In setting forth the cost for maintenance, a definite

"lump" sum need not be named, but at least a maximum tax rate therefor is essential. How else can a voter know the extent of the financial obligation involved? Will such maintenance cost consume the annual proceeds of the entire tax authorized by statute, or a less amount? What is to be the maximum yearly expenditure for maintaining the bridge? No information upon this subject is furnished in the petition. In fact, that document said nothing at all concerning the cost of maintenance. Upon the subject of costs, the petition states, as shown above:

.''* * * the total amount to be expended for the *construction* [the italics are ours] of said bridge shall not exceed $1,200,000, and that the portion of said total amount [construction cost] to be expended * * * for said purpose shall not exceed $400,000.''

Clearly, the petitioners contemplated that the $400,000 to be spent was entirely for construction purposes. Obviously, then, the maintenance cost was to be something other than and additional to the construction outlay. Cost contemplated for maintenance was not stated in the petition, as required by Section 4678, supra. According to said application and the record presented, the one mill authorized by statute for construction and maintenance would produce barely enough to pay the construction cost over a period of 20 years, without supplying any funds whatever for maintenance expenses. Therefore, when the voter went to the ballot box, he would have no information, so far as the petition and the proposed ballot were concerned, regarding what expenditures he would be called upon to pay for maintaining the bridge. Section 761 of the 1927 Code contains this language:

"When a * * * public measure is to be voted upon by the electors, it shall be printed in full upon a separate ballot, preceded by the words, 'Shall the following * * * (or public measure) be adopted?'"

While Section 763 thereof proceeds:

"Ballots referred to in the two preceding sections [Sections 761 and 762, supra,] shall be substantially in the following form:
'Shall the following * * *　　　　　　　　YES ☐ .
(or public measure) be adopted?'　　　　NO ☐
(Here insert in full the proposed * * * public measure.)''

Construing this statute in reference to a franchise election, we said, in *McLaughlin v. City of Newton*, 189 Iowa 556:

"* * * we are not in a position to know whether these electors who voted for these propositions would have voted for them, had they then before them all the conditions under which the franchise should be granted. We therefore hold that the statute is mandatory. It provides that the proposition shall be printed in full upon the ballot."

By this it is not meant that the contracts with Nebraska, or a municipal division thereof, shall be set forth in detail, but it is mandatory that "the language of the ballot [be] so plain that there * * * [shall] have been no mistake as to the proposition submitted." *Lee Elec. Co. v. City of Corning*, 199 Iowa 680. Such is true even though, under the circumstances, it shall not be necessary to submit the question *"in haec verba."* Enough should appear at least to indicate the *proposition*. The subject-matter for the ballot is obtained from the petition. Plainly, in the case at bar, the proposition was not fully stated in the petition or in the proposed ballot. From neither can be ascertained the maintenance cost after construction.

Would an elector of Pottawattamie County vote for the proposition of expending $400,000 in construction when the maintenance thereof thereafter seemed excessive or unbearable to him? If an annual sum additional to the $400,000 was to be used for maintenance, the voter should know the extent of the contemplated expenditure in that regard. Wherefore, said expense, together with the price of construction, should have been stated in the petition. The maximum tax for said costs, the authorization of which was sought by the petitioners, should have been set forth in the ballot.

IV. There also is defect in the petition because it does not clearly specify that, under the proposed plan, Nebraska, or a municipal division thereof, is to furnish the remaining $800,000, which, added to Pottawattamie County's $400,000, makes up the aggregate cost of construction. By this is not necessarily meant that Nebraska, or a municipal division thereof, must be shown to have already bound itself to build such remainder of the bridge, but that it is proposed Nebraska, or a municipal division thereof, if it has not already done so, will thus obligate itself,

and that the contemplated bonds, although duly authorized through the election, shall not be issued unless and until it is sure that Nebraska, or a municipal division thereof, will undertake to complete the construction. Of course, if Nebraska, or a municipal division thereof, already has obligated itself to build and maintain a certain portion of the bridge, a statement of the proposition should include that fact. These petitioners do not ask, in their application to the board, for authority to construct and maintain an entire bridge, but only a portion of one. Is there to be completion of the project? Naturally, the electors would desire such information. Intelligent voting could not take place without that knowledge. To make sure that the voter would be enlightened upon this subject, the legislature adopted Sections 761 and 763. Within the purview of those enactments, the proposition "shall be printed in full upon a * * * ballot." Unless the petition sets forth the "proposition," manifestly the supervisors could not incorporate the same in the ballot. The ballot without such incorporation would not contain the proposition "in full," as required by the statute.

Two material facts were omitted from the proposition: First, the cost of maintenance, to be stated either in a lump sum or by terms of an annual tax rate; and second, the following information to the electors: On the one hand, if Nebraska, or a municipal division thereof, has not already engaged itself to build and maintain a portion of the structure, then the proposition should make clear that, before the bonds are actually issued (although duly authorized), it is contemplated, under the plan, that Nebraska, or a municipal division thereof, would obligate itself to complete the bridge, and maintain all or a part of it; while, on the other hand, if Nebraska, or a municipal division thereof, has already obligated itself to build and maintain a portion of the bridge, a statement of the proposition should include that fact. Understanding for intelligent voting cannot be had without these essential facts. They are so important that a statement of them should be set forth in the petition and the ballot, as contemplated by the various statutory provisions above quoted. Lacking those statutory essentials, the petition was defective. That defect was of such importance that substantial compliance was not made with the statute. Resultantly, under the statute, there was no petition. Without a legal petition

before them, mandamus will not compel the supervisors to call the election.

We do not here hold or suggest that, if the county of Pottawattamie were legally authorized by its electors to construct and maintain the entire bridge, they could not afterwards, under the statute, have contracted with Nebraska, or a municipal division thereof, to pay part of the cost of either construction or maintenance.

Wherefore, the judgment of the district court is reversed. —*Reversed.*

MORLING, C. J., and STEVENS, ALBERT, and GRIMM, JJ., concur.

EVANS, FAVILLE, DE GRAFF, and WAGNER, JJ., would dismiss, on the ground that appeal presents only a moot question.