FRED GREAVES, Plaintiff, Appellee, v. CITY OF VILLISCA, IOWA, et al., Defendants, Appellants.

No. 42072.

DECEMBER 12, 1933.

REHEARING DENIED FEBRUARY 8, 1934.

Harold Bickford, and Stipp, Perry, Bannister & Starzinger, for appellants.

Hysham & Billings, R. J. Organ, and Cook & Cook, for appellee.

KINDIG, J.—■ On November 8, 1932, the town council of Villisca, after meeting preliminary requirements, submitted to the electors of that town the following public measure:

"Shall the City of Villisca, Iowa, establish, erect, maintain and operate an electric light and power plant, with all the necessary poles, wires, machinery, apparatus and other requisites for such plant, the cost of construction thereof not to exceed $150,000.00 to be paid solely and only out of the earnings of said plant without the incurring of any indebtedness therefor by said City of Villisca, Iowa?"

The proposition was carried by a large majority of the voters. Thereafter, under authority of the election, the town contracted with the Electric Equipment Company of Des Moines, a defendant-appellant, for the construction of the electric plant. But before the plant was constructed, the plaintiff-appellee, Fred Greaves, a citizen, taxpayer, legal elector of, and a user of electricity in, the town of Villisca, commenced the present action to enjoin further procedure in the establishment of the electric plant, for the reason that "the ballot used in said election of November 8, 1932, was defective in that the same did not comply with the provisions of sections 763 and 6131, Code of Iowa, 1931; and did not properly advise the electors voting at said election of the essential elements of the proposition to be voted upon by them."

Somewhat similar ballots containing practically the same public measures were considered by this court, in Hogan v. City of Corning, 217 Iowa 504, 250 N. W. 134, and Wyatt v. Town of Manning, 217 Iowa 929, 250 N. W. 141. The argument in those cases was very similar to the argument in the case at bar. Here the appellee stresses the point that the public measure submitted was not full enough to authorize the town to pledge or mortgage the plant to secure the payment of the purchase price.

In Hogan v. City of Corning, 217 Iowa 504, reading on pages 507 and 508, Mr. Justice Claussen, speaking for the court, declared:

"It is said that the ballot does not conform to the requirements of sections 761, 762 and 763 of the Code. Code, sections 761, 762, and 763 are the provisions of the general election laws in relation to ballots for the submission of public measures. The objection to the ballot is that the measure to be voted on was not printed in full

on the ballot, notwithstanding the fact that the sections referred to require that the measure be printed in full on the ballot. The question printed on the ballot is as follows: 'Shall the City of Corning, Iowa, establish, erect and construct, a municipal electric light and power plant at a cost of not to exceed the sum of $160,000.00, to be paid for out of the future earnings of said plant?'

"It is conceded by the parties that the city of Corning contemplated proceeding with the construction of the plant under the provisions of Code, sections 6134-d1 to 6134-d7. Section 6134-d3 provides: 'And such proposition when submitted to an election shall state the maximum amount which may be expended for the establishment, construction, or acquisition of such plant.'

"This provision of the law was complied with. The sections contain provisions concerning the contents of the contract and the notice to be given and manner in which the contract shall be entered into. Any 'contract' that might be printed on the ballot would in all probability prove to be other and different from the one finally entered into, and would be a deception to the voters regardless of the good faith of the officers preparing the ballot. The matters which appellees insist should be printed upon the ballot will come into being another day. Under the law the contract will be the product of the future. Neither the contract nor its substance can be printed on the ballot before the contract exists. It is contended that many details of the construction of the plant, and the manner of its operation and methods of accounting, and manner of financing, were essential elements of the ballot. Such matters, like the contract, will be products of the future. We hold that the ballot was sufficient in form. * * * The difference between working out a franchise ordinance, acceptable to the grantee and the council, and working out plans for a plant and a contract for its construction and payment acceptable to an undetermined second party, of which notice must be given and to which the public has a right to object, is, on the face of things, very great. The one is possible. The other is impossible. Our holding in the case at bar takes account of such impossibility. The Legislature has authorized cities to erect electric light plants under a scheme by which much of the detail must be worked out after the venture is undertaken. In the very nature of things, such matters are not details of a present proposition. We hold that the ballot used was sufficient."

Again, in Wyatt v. Town of Manning, 217 Iowa 929, supra, we said, reading on pages 933–936:

"According to the ballot under consideration, it is clear that the municipality was attempting to establish its electric plant under sections 6134-d1, 6134-d2, and 6134-d3 of the 1931 Code. * * * * What, then, in view of the foregoing legislation, is the proposition to be submitted to the electors of the town of Manning, under section 6134-d3 of the 1931 Code? Under section 6127, above mentioned, the city may establish and erect an electric light and power plant, but, before the city council may exercise that power, the erection and establishment must be authorized by an election of the people, as indicated by section 6131. If the proposition contemplated by sections 6127 and 6131 were to be submitted to the people, the proposition would be first whether the city shall erect and establish an electric light or power plant. But that would only be part of the proposition, because under section 6239 of the 1931 Code, it is provided that 'cities and towns when authorized to acquire the following named public utilities and other improvements may incur indebtedness for the purpose of: 1. Purchasing, erecting, extending, reconstructing, or maintaining and operating waterworks, gasworks, electric light and power plants, or the necessary transmission lines therefor, and heating plants. * * * ' That power, however, is limited by section 6241, which provides: 'No such indebtedness shall be incurred until authorized by an election.' And section 6245 outlines what must be contained upon the ballot for such an election.

"In the case at bar, however, the council of Manning sought to erect and establish the plant, not by incurring a general indebtedness, contemplated by section 6239 of the Code, but rather through the method outlined by sections 6134-d1 and 6134-d2 of that Code. The erection and establishment of a plant under the last-named sections would not incur a general obligation, nor would the cost be payable in any manner by taxation. So, generally speaking, at the election under sections 6127 and 6131, the proposition would be, first, shall the plant be established; and, second, shall the indebtedness be incurred as anticipated by sections 6239 and 6241 of the Code, or shall the property be otherwise paid for? On the other hand, however, when an election is held under sections 6134-d1, 6134-d2, and 6134-d3, the proposition would be, generally speaking, first, whether a plant shall be constructed without a general

indebtedness and with no obligation payable in any manner by taxation; and, second, what will be the maximum cost thereof? There is no other proposition, generally speaking, to be submitted to the electors. An elector is entitled to know, generally speaking, first, is an electric plant to be built? and, second, is an indebtedness to be incurred therefor payable by taxation, or shall the plant be paid from the earnings without a general indebtedness payable by taxation, or shall the property be otherwise paid for? Everything depends, of course, upon the facts and circumstances of the case."

The contract entered into by the town of Villisca with the appellant Electric Equipment Company provides that the electric plant established as well as the future earnings thereof are pledged as security for the purchase price. This, the appellee argues, the city council did not have authority to do under the public measure submitted to the people for approval. In the Wyatt case, supra, we said:

"Whether a mortgage on an existing plant or a contract to apply past earnings on the plant would constitute a general obligation, we do not now decide or suggest, for in the case at bar it is clear that the past earnings are not involved because the plant is being newly constructed. Likewise it is clear, therefore, that an existing plant is not being mortgaged."

Of course, if the proposition were to pay for the new plant out of past earnings of an old plant, the situation would be different from the one presented in the case at bar. A taxpayer would be interested in knowing whether moneys already in the city treasury were to be taken therefrom and used to improve or purchase a new plant. Indirectly, at least, the taxpayer would be affected in such event. Therefore, if the proposition is to take such money out of the city treasury and use it to pay for the new plant, such proposal should be set forth in the public measure to be submitted to the people. See O'Keefe v. Hopp, 210 Iowa 398, 228 N. W. 625; McLaughlin v. City of Newton, 189 Iowa 556, 178 N. W. 540. Likewise, if the city already owns an electric plant and proposes to add thereto or build a new one by securing the purchase price of the addition or the new plant by a pledge·of, or a mortgage on, the old plant, the taxpayer would be interested in the proposition. If, for

instance, the mortgage on the old plant were foreclosed, that amount of property would be taken from the city, and the taxpayer thereof, at least inferentially, would be affected by the loss of such mortgaged property. In the event contemplated, the city already owned the old plant. So, if the contemplated mortgage thereon were foreclosed the property already belonging to the city would be taken therefrom on the obligation. Then if the public measure contemplates such mortgage on property already owned by the city, the ballot should set forth the proposition. See O'Keefe v. Hopp (210 Iowa 398, 228 N. W. 625), supra, and McLaughlin v. City of Newton (189 Iowa 556, 178 N. W. 540), supra.

Before the court in the case at bar, however, is the question whether the city, under the approval of the public measure under consideration, can mortgage or pledge the new plant to secure the cost of establishing the same. Under the reservation in the Wyatt case (217 Iowa 929, 250 N. W. 141), supra, this question was not included. On the other hand, the Wyatt case in effect determined the proposition now before us. We, in effect, held in the Wyatt case that the submission of a public measure similar to the one now involved would authorize the pledging of the new plant and the future earnings thereof. Also, we said in Hogan v. City of Corning, 217 Iowa 504, supra, reading on page 508, 250 N. W. 134, 135:

"It is contended that  *  *  *  details of the  *  *  *  manner of financing  *  *  *  [is an] essential (element) of the ballot. Such (matter), like the contract, will be products of the future. We hold that the ballot was sufficient in form."

Because the electric plant under the contract is newly established, it, in effect, does not come into the possession of the town without the pledge. When the newly erected plant is acquired by the manner and way here contemplated, however, the elector is not interested in knowing every detail of the contract. This is true, because the contemplated contract is not to be the general obligation of the city and in no way payable from taxation or by the use or application of any moneys or property already owned by the city or town. The passing of the title in the case now before us is concurrent in time with the execution of the pledge. So, as a matter of fact, the town never has the title to the property without its incumbrance by the pledge. Before the new plant existed, the contract for the establishment thereof and the pledge thereon was

entered into by the city. Consequently, as before indicated, the property and the pledge lien come into being at the same time. When pledging old property already owned by the city, the municipality goes one step farther than it does in pledging the new property acquired in the manner and way here contemplated. Taxpayers can in no way be prejudiced by the pledge now under consideration because no general obligation of the town is thereby created; nor are any moneys or property already owned by the city incumbered or pledged. Property owners in the town can never be called upon to pay taxes because of that pledge. Only the newly acquired property and the net income therefrom can be appropriated for the redemption of the pledge. There can be no prejudice to the taxpayers of the town under any circumstances. The town's property, other than that pledged in the manner and way described, will not be taken and the taxpayers' taxes will not be increased. Each elector necessarily would know that a plant procured entirely on credit probably would be pledged, as authorized, or conveyed by conditional sale to secure or protect the purchase price. Under those contemplated circumstances, authority to establish the plant out of the future earnings would carry with it, because of the statutory provisions, the right to pledge the newly acquired plant when, as in this case, the plant and the pledge therein come into being at the same time under the same contract. These elements of financing are included within the proposed form of contract contemplated by section 6134-d4 of the 1931 Code. Hogan v. City of Corning, 217 Iowa 504, 250 N. W. 134, supra.

It is argued by the appellee that in the case of a foreclosure of the pledge on the newly acquired property, the purchaser thereof at the execution sale would thereby automatically be granted a franchise without the consent or authority of the people in the town. That contention, of course, is without merit. The purchaser at such contemplated foreclosure sale would attain nothing but the plant pledged. In no event would he by such purchase alone receive a franchise to operate the electric plant. If such contemplated purchaser desired such franchise, he necessarily would have to proceed to obtain it in the way outlined by statute.

According to the ballot now under consideration in the present controversy, it was apparent to the electors of Villisca that no general obligation of the town was to be incurred by the establishment of the electric plant. Likewise, it was equally apparent to those

electors that no money or property already owned by the town would be pledged or appropriated for the use of the new electric plant. To that extent the electors were concerned, but no farther. Wyatt v. Town of Manning (217 Iowa 929, 250 N. W. 141), supra; O'Keefe v. Hopp (210 Iowa 398, 228 N. W. 625), supra; McLaughlin v. City of Newton (189 Iowa 556, 178 N. W. 540), supra. Every elector knows, as before stated, that if the proposition to establish the plant in the method outlined by sections 6134-d1 and 6134-d2 is carried, the council may finance the same by pledging the newly established plant and the income therefrom, as provided in said section 6134-d1. Hogan v. City of Corning (217 Iowa 504, 250 N. W. 134), supra; Wyatt v. Town of Manning (217 Iowa 929, 250 N. W. 141), supra. This method of financing is a part of the contract contemplated in section 6134-d4 of the 1931 Code. That section provides:

"Before any municipality shall enter into any such contract as provided in section 6134-d1, for the establishment of a plant, or for the extension or improvement of an existing plant, to cost five thousand dollars or more, the governing body proposing to make such contract shall give thirty days' notice of its intention to adopt proposed plans and specifications and proposed form of contract therefor, by publication once each week for two consecutive weeks in some newspaper of general circulation in the municipality and also in some newspaper of general circulation in the state of Iowa, the first publication of which shall be at least thirty days prior to the time of hearing fixed in said notice."

Manifestly it would not be known by the city council at the time of submitting the public measure to the people whether the successful applicant for the contract would desire a pledge of the new plant or a conditional sale contract therefor. The city is not required to do the impossible thing. Hogan v. City of Corning (217 Iowa 504, 250 N. W. 134), supra. Under all the circumstances, it is apparent that the public measure submitted was sufficient to enable the city to pledge the plant being established, together with the future net income therefrom, as security for the purchase price.

Wherefore, the judgment of the district court is reversed.—Reversed.

All Justices concur except EVANS, J., who takes no part.