FLOYD LAHN et al., Appellants, v. PRIMGHAR, a Municipal Corporation, et al., Appellees.

No. 44458.

August 5, 1938.

Rehearing Denied December 16, 1938.

Locke & Lampman and G. C. Murray, for appellants.

Cornelius Vande Steeg and Stipp, Perry, Bannister & Starzinger, for appellees.

Kintzinger, J.—At a special election held in the town of Primghar, Iowa, on May 25, 1937, the following proposition for the establishment of a municipal electric light and power plant was carried by the voters:

"Shall the Town of Primghar * * * establish * * * an electric light *or* power plant with all the necessary poles, wires, machinery, apparatus and other requisites of such plant, the cost of construction thereof not to exceed $125,000.00 to be paid solely and only out of the earnings of said plant without the incurring of any indebtedness therefor by the town?" (Italics ours.)

The proposition submitted on the foregoing ballot was whether or not the town should establish an electric light *or* power plant; and appellants' chief contention for declaring the election void is because the question was submitted in the alternative.

Thereafter plans and specifications for the proposed plant were duly filed with the town clerk and after notice of a hearing thereon was duly given, the proposed plans and specifications and form of contract were adopted, upon which bids were thereafter received. These specifications, among other things, provided:

"Approximately the last $40,000.00 (of bonds issued for the payment of said plant) shall be callable in inverse numerical order, at any interest due date, after eight years from date of issue."

A contract for the construction of the plant was entered into between the town and the Kepp Contracting Company. Appellants allege that the above provision for the callability of bonds was omitted therefrom making the contract invalid because of a variance between the contract and the specifications.

Appellants also question the validity of the election and the contract entered into thereafter upon other grounds which are set out in the opinion.

After the contract for the construction of the plant was let to the Kepp company, plaintiffs filed a petition in equity asking that the contractor be enjoined from proceeding with the execution of the contract because the election and the contract were both invalid. Other facts are stated in the opinion.

The lower court held in favor of defendants, and plaintiffs appeal.

I. Appellants contend that the election was invalid because the question submitted on the ballot was in the alternative, calling for the establishment of an electric light *or* power plant, and was therefore neither a vote for an electric light plant, nor for a power plant, nor for a combined electric light *and* power plant.

The statute authorizing the establishment and construction of a light or power plant is section 6127 of the Code, which provides as follows:

"Cities and towns shall have the power to purchase, establish, * * * and operate * * * heating plants, waterworks, gasworks, or electric light or power plants, with all the necessary reservoirs, mains, * * * poles, wires, * * * and lease or sell the same."

The ballot submitted at the election was as follows:

"Shall the town of Primghar * * * establish, erect, maintain, and operate an electric light *or* power plant with all the necessary poles, wires, machinery, apparatus and other requisites of such plant, the cost of construction thereof not to exceed $125,000 to be paid solely and only out of the earnings of said

plant without the incurring of any indebtedness therefor by the Town of Primghar, Iowa?'' (Italics ours.)

Appellants contend that, by the use of the word ''or'' between the words ''electric light'' and the words ''power plant'' as used on the ballot, the city was not authorized to establish a combined *light* plant *and power* plant, but that in order so to do, it was necessary to have used the conjunctive particle ''and'' between the words ''electric light'' and the words ''power plant;'' and that by failing to use the words ''light *and* power plant'' on the ballot, the city was not authorized to establish both a ''light plant'' and a ''power plant.''

The question, therefore, relating to this branch of the case is whether or not the failure to use the term ''light *and* power plant'' invalidates the election.

It is conceded by both parties that if the ballot had submitted the question of a combined electric light *and* power plant, the election would have been legal. It is also conceded that in practically all of our cases where a ''light *and* power plant'' was established, the question submitted related to the establishment of a light *and* power plant. Hogan v. Corning, 217 Iowa 504, 250 N. W. 134; Iowa Electric Light & Power Company v. Town of Grand Junction, 216 Iowa 1301, 250 N. W. 136; Wyatt v. Manning, 217 Iowa 929, 250 N. W. 141; Greaves v. Villisca, 217 Iowa 590, 251 N. W. 766; Pennington v. Fairbanks, Morse & Co., 217 Iowa 1117, 253 N. W. 60; Brutsche v. Coon Rapids, 218 Iowa 1073, 256 N. W. 914; Id., 220 Iowa 1295, 264 N. W. 696; Id., 223 Iowa 487, 272 N. W. 624; Northwestern Light & Power Co. v. Grundy Center, 220 Iowa 108, 261 N. W. 604.

Appellants contend that the word ''or'' contained in this statute and the word ''or'' contained in the ballot should be construed in a disjunctive sense so as to prevent the word ''or'' from being construed as the word ''and''.

Appellees contend that it has never been held illegal to establish a combined light *and* power plant, where the question was submitted in the words of the statute for establishing an electric light *or* power plant.

It is true that the word ''or'' is a disjunctive particle, and usually marks an alternative as either ''this'' or ''that'', depending upon the words with which it is used; and, ''while in

its strict signification the term expresses a disjunctive meaning and marks an alternative, it may be used or construed in a conjunctive sense." 46 C. J. 1124, section 1; 46 C. J. 1126, section 6. It has accordingly been held by courts generally that although the word "or" may express a disjunctive meaning rather than a conjunctive one, it may nevertheless be used in a conjunctive sense, and hence the word "or" may be construed to mean "and". 46 C. J. 1126, section 6.

A conjunctive meaning has been repeatedly placed upon the word "or" by this court in order to prevent an absurd or unreasonable result. State v. Myers, 10 Iowa 448; State v. Brandt, 41 Iowa 593, 614; State v. Smith, 46 Iowa 670, 673; Eisfeld v. Kenworth, 50 Iowa 389, 391; Williams v. Poor, 65 Iowa 410, 415, 21 N. W. 753, 755; Mitchell v. Charles City W. Ry., 169 Iowa 237, 251, 148 N. W. 975, 980; State v. Gardner, 174 Iowa 748, 755, 156 N. W. 747, 750; L. R. A. 1916D, 767, Ann. Cas. 1917D, 239; Chicago, R. I. & P. R. Co. v. Rosenbaum, 212 Iowa 227, 237, 231 N. W. 646, 650.

In State v. Brandt, 41 Iowa 593, l. c. 614, this court said:

"By recurring to the language of section 4243, it will be seen that, by changing the word 'or' preceding the word 'unaccounted for' to the word 'and,' the nature and consequences of the offense are entirely changed; * * * while the offense punishable under section 4243, when the word 'and' is substituted for the word 'or,' results in a loss or injury to the taxpayers * * * to the extent of the money unlawfully used or loaned *and* 'unaccounted for;' * * *. By thus construing '*or*' to mean '*and*,' * * * we make the several sections harmonious and consistent, * * *.

"That courts have interpreted the word 'and' as a disjunctive, and the word 'or' as a conjunctive when the sense absolutely required, * * * is laid down as elemental. Bishop on Statutory Crimes, p. 243. * * *."

In State v. Smith, 46 Iowa 670, l. c. 673, this court said:

" 'It is a rule in the construction of statutes, that, * * * the grammatical sense of the words is to be adhered to. If that is contrary to, or inconsistent with, any expressed intention or any declared purpose of the statute, or if it would involve any absurdity, repugnance or inconsistency in its different pro-

visions, the grammatical sense must then be modified, extended or abridged, so far as to avoid such an inconvenience.' * * * This court has held the doctrine to be elementary that the word *and* may be interpreted as a disjunctive, and the word *or* as a conjunctive.''

In Williams v. Poor, 65 Iowa 410, l. c. 415, 21 N. W. 753, 755, this court said:

''In the construction of statutes, the words 'and' and 'or' are convertible, as the sense may require, even in a criminal statute, where a strict construction usually prevails. State v. Myers, 10 Iowa, 448; State v. Brandt, 41 Iowa 593.''

In Chicago, R. I. & P. R. Co. v. Rosenbaum, 212 Iowa 227, 237, 231 N. W. 646, 650, this court in construing the provisions of a statute said:

''It will be observed that the discrepancy between the title to the act and the act itself is in the use of the words *'and'* and *'or.'* It is a well recognized rule of construction, that when necessary to effectuate the intent of the legislature, conjunctive words may be construed as disjunctive and vice versa. See 36 Cyc. 1123. This rule of construction has even been applied to statutes relative to criminal law. See State v. Myers, 10 Iowa 448; State v. Brandt, 41 Iowa 593.''

Many cases are cited by appellants in support of the contention that the word ''or'' in the statute and in the ballot should be construed in the disjunctive or alternative sense. We have examined the cases but have come to the conclusion that they are distinguishable from the circumstances and facts in the present case. The facts in the cases cited clearly refer to alternative powers or prohibitions and do not apply to the facts similar to those in the case at bar.

Under the powers given by the statute in question, cities and towns have the right to establish an ''electric light or power plant.'' If appellants' contention were correct, the city would have no power to establish a combined light and power plant because the statute authorizes the establishment of an electric light *or* power plant. Under such contention cities would have the right to establish either one or the other, but not both. An electric plant produces electrical energy which may be used for

either light or power purposes, and the product of an electric plant may be used for either light or power. The use to which electrical energy is put does not affect the character of the plant or its products. Such a construction would be absurd and contrary to the fair meaning of the statute, or the intention of the legislature. The terms used in the statute describe the plant as an "electric light *or* power plant."

We are constrained to hold that there is nothing in the wording. of the ballot submitted to the electors which would in any manner advise an elector that he was voting upon the establishment of either one kind of a plant or another; but from the language used, the voter could readily understand that the city was seeking to establish a light *and* power plant.

In Pennington v. Sumner, 222 Iowa 1005, l. c. 1010, 270 N. W. 629, l. c. 632, 109 A. L. R. 355, this court, speaking through Justice Donegan, said:

" * * * we do not think it possible that any person who voted upon the proposition. involved in this case had any thought that he was voting to authorize the city to establish any other kind of a light and power plant except one in which the energy used would be furnished by electricity."

Likewise in this case we think it was hardly possible that any person voting upon the proposition involved herein had any idea that he was not voting for the establishment of a combined "electric light *and* power plant."

It is therefore our conclusion that the word "or" as used in the statute and on the ballot was used in the conjunctive sense and that the word "or", both in the statute and ballot, should be construed as "and". We therefore hold that the lower court was right in holding that the election was not invalid.

■ II. Appellants also contend that the court erred in holding that the contract complied with the specifications upon which all contractors bid. They contend that the contract omitted a provision reserving to the town the right to call approximately $40,000 worth of revenue bonds after a certain time at any interest paying period before maturity, thereby creating a variance between the contract and the specifications.

The specifications upon which all contractors bid contained a form of contract containing the following clause relating to

payment of bonds: "Approximately the last $40,000 shall be callable in inverse numerical order, at any interest due date, after eight years from date of issue." We have examined the pleadings and record but find that no such issue was raised in the court below. From our examination of the evidence it is extremely doubtful whether or not there is a variance between the contract and the specifications; but as no issue was raised upon this question in the court below, it cannot be raised for the first time in this court because an issue not raised in the lower court cannot be considered on appeal. State v. O'Brien, 158 Iowa 659, 138 N. W. 895.

III. Appellants also contend that the court erred in failing to hold that the contract was in violation of the specifications and instructions to bidders relating to the form bids. The notice to bidders provided that all bids should be filled out on the proposal form prepared by the engineers. The specifications relating to the proposed form of proposals provided inter alia that:

"It is understood that the form of this proposal * * * shall not be changed or added to in any respect. Any such changes shall disqualify this proposal and * * * all proposals must be submitted on an absolutely uniform basis."

The specifications relating to bids on Diesel engines provide as follows:

"2-a. Sizes: Bids are desired on the following approximate alternate combinations of engine sizes. * * *
"Alternate 'A': Offer two similar engines, in sizes from 225 B. H. P. to 250 B. H. P. each.
"Alternate 'B': Offer two engines, one to be a unit of from 225 B. H. P. to 250 B. H. P., and the other a unit of from 250 B. H. P. to 300 B. H. P. in size."

Appellants contend that under these alternates, contractors could bid only upon one kind or type of engine. It is clear, however, that under these specifications bidders were expected to bid upon two different classes or types of engines, but were not limited to only one kind or make of engine under either. Under Alternate "A" the engines were specified as two similar engines in size from 225 B. H. P. to 250 B. H. P. each. Under Alternate "B" the engines were specified as two engines, one to be of a

unit of 225 B. H. P. to 250 B. H. P., and the other a unit from 250 B. H. P. to 300 B. H. P.

Nothing contained in these two alternates limited or restricted the bids to any particular kind of engine. The only restriction made in Alternate "A" was that the proposals be made upon two similar engines of a certain size and horse power; and likewise the only restriction made in Alternate "B" was that the proposals be made upon two engines each of a different size and horse power; but these alternates contained no restrictions upon bidding upon different makes of engines if they otherwise complied with the size and type referred to in the specifications.

Bids were made by three different contractors under each of these alternates, all of whom bid on different kinds or makes of engines, no particular kind or make being specified in either of the alternates.

The record shows that the proposals submitted by the Kepp company were in the identical form prepared by the town's engineers, and that the types and sizes of engines referred to in such proposals corresponded with the specifications. As there was nothing in either of these alternates limiting contractors to bids upon only one kind or make of engine, we are inclined to hold that the proposals submitted by the Kepp company were in the identical form prepared by the town's engineers; and this company, as well as all other companies, were permitted to bid upon different makes of engines providing they complied with the character or type referred to in the alternates named in the specifications.

It is true that in submitting its bid, the Kepp company offered bids upon five different makes of engines; but it is likewise true that all of the engines bid upon correspond with the type and size named in the specifications. The fact that the Kepp company's different proposals were referred to as Alternates "A", "B", "C", "D", and "E" in the proposal does not alter the fact that the offers made in either one of them were made in the identical form and terms of Alternate "A" and Alternate "B" of the specifications. It was held by this court in Brutsche v. Town of Coon Rapids, 223 Iowa 487, 272 N. W. 624, that contractors may bid upon as many different makes of engines as will meet the requirements of the specifications.

Appellants practically concede that if appellees' Alternate

"E" had been called Alternate "B" it would have complied with the terms of the specifications.

Appellants do not deny that the proposal made by the Kepp company in its Alternate "E" conforms to the proposal described in Alternate "B", but simply state that, because the various makes of engines were referred to as Alternates "A", "B", "C", "D", and "E" in the Kepp company's bid, they did not meet the terms of the specifications; but we find nothing in the plans and specifications preventing any or all of the bidders from submitting bids upon several different makes of engines, provided they correspond with the type specified in Alternate "A" and Alternate "B", as specified.

This conclusion is supported by the testimony of L. A. Winter, one of appellee's engineers, who said that:

"On the bidding conditions there was no limit under the specifications on the number of different makes of engines that one bidder could offer. * * * We asked for bids on two alternate engine groups; alternate "A" was for two engines of identical capacity, with a rating of 225 H. P. to 250 H. P. each. Alternate "B" asked for bids on two engines, one from 225 to 250 H. P. and the other from 250 to 300 H. P. The proposal form contains place for name of engine, builders of engines, generators, exciters, water pumps, and cooling system, also Horse Power of each unit revolutions per minute, number of cylinders, the mean effective pressure in each unit, the K. V. A. capacity of the generator and the kilowatt capacity of exciters and total lump sum bid."

Our conclusion is also supported by the case of Brutsche v. Coon Rapids, 223 Iowa 487, 272 N. W. 624.

For the reasons herein expressed, we are constrained to hold that the lower court was right in holding that the Kepp contract was in compliance with the specifications, and responsive to the call for bids as contained in Alternates "A" or "B" therein set out. We find no error in the court's ruling on this question.

IV. Appellants also contend that the contract is invalid because it limits the operation of the maximum rate provision therein to the life of the original bonds, thus precluding the town from issuing refunding bonds, under chapter 166, Acts of the 47th General Assembly.

The provisions of section 6134-d2 refer to bonds issued under the authority of the Simmer law, and are payable solely out of the future earnings of the plant. This statute provides:

"Such contract shall specify the maximum rate that may be charged the consumers, including the municipality, and the city shall not increase or fix any rate beyond such maximum."

The contract provides that:

"The maximum rates for electricity which may be charged by the municipality during the term of this contract and while said Electric Light Plant Revenue Bonds * * * are outstanding, shall be as follows: * * * (Setting out the rates.)

Appellants contend that the rates fixed in the contract are limited to the term of the contract, and while the original bonds are outstanding; and that if any of these bonds should be refunded under the provisions of chapter 166, 47th General Assembly, the provision relating to the maximum rate fixed in the contract would be violated.

Neither the statute nor the contract, however, contemplates that the maximum rates in the contract shall be in effect after the cost of the plant has been fully paid. In Keokuk Water Works Co. v. City of Keokuk, 224 Iowa 718, 277 N. W. 291, we held that after the plant has paid for itself the provisions of the Simmer law are no longer effective. But refunding bonds issued to take up original bonds will not pay off the indebtedness of the plant; the original indebtedness would remain although refunding bonds were issued to take up the original bonds. It is therefore our conclusion that the maximum rates are effective as long as the obligations contained in the revenue bonds are unpaid.

The issuance of refunding bonds to take up the original bonds issued to pay the cost of the plant are, by the statute itself, made applicable to refunding bonds issued under chapter 312 of the Code authorizing the issuance of bonds payable out of the future earnings of the plant. Section 1 of chapter 166 of the Acts of the 47th General Assembly relating to refunding bonds provides, inter alia, that:

"All such refunding bonds or obligations issued as authorized in this act, shall conform to the provisions of chapter 312 of the code of Iowa, 1935, *shall be payable only from the net*

*earnings of the plant,* and shall not constitute a general obligation of any such city or town or be enforceable in any manner by taxation.'' (Italics ours.)

As such refunding bonds are payable solely out of the future earnings of the plant, the maximum rate is kept in force until final payment of such bonds.

For the reasons herein expressed, there was no error in holding the contract valid.

V. Appellant also contends that the election was invalid because the ballot was not in the statutory form and was ambiguous. The form of the ballot in question was as follows:

"NOTICE TO VOTERS: For an affirmative vote upon any question submitted upon this ballot make a cross (x) in the square after the word 'YES.' For a negative vote make a similar mark in the square following the word 'NO.'

SHALL THE FOLLOWING PUBLIC MEASURE BE ADOPTED?

Shall the town of Primghar * * * establish, erect, maintain and operate an electric light or power plant with all the necessary poles, wires, machinery, apparatus and other requisites of such plant, the cost of construction thereof not to exceed $125,000.00 to be paid solely and only out of the earnings of said plant without the incurring of any indebtedness therefor by the town of Primghar, Iowa?''

This ballot is substantially in the form required by law and we find no ambiguity therein. Code of 1935, section 6146 and section 6245; Abbott v. Iowa City, 224 Iowa 698, 277 N. W. 437.

This conclusion is supported by the ruling in Hogan v. Corning, 217 Iowa 504, 250 N. W. 134; Greaves v. Villisca, 217 Iowa 590, 251 N. W. 766; Wyatt v. Manning, 217 Iowa 929, 250 N. W. 141; Interstate Power Company v. City of Forest City, 225 Iowa 490, 281 N. W. 207, in an opinion written by Justice Anderson.

We are satisfied that the form of the ballot complained of substantially meets the requirements of the statute and therefore conclude the trial court was right in so holding.

Other errors are alleged. We have considered them all but find no merit therein.

698

For the reasons hereinabove expressed, the judgment of the lower court is hereby affirmed.—Affirmed.

SAGER, C. J., and ANDERSON, STIGER, RICHARDS, and HAMILTON, JJ., concur.