WILLIAM M. SEMONES and A. G. BEECH v. CHARLES W.
    NEEDLES, Census Enumerator for the CITY OF AT-
    LANTIC, IOWA, for the year 1905, Appellant, and the
    EXECUTIVE COUNCIL OF THE STATE OF IOWA, and
    ALBERT B. CUMMINS, WM. B. MARTIN, B. F. CARROLL
    and GILBERT S. GILBERTSON, members of said EXEC-
    UTIVE COUNCIL, and WILLIAM B. MARTIN, Secretary
    of State of the STATE OF IOWA.

Census: FRAUD IN ENUMERATION: ACTION TO CORRECT: PARTIES. An
1. individual citizen may maintain an action to correct a census
    enumeration of the city in which he resides, and to exclude
    from the rolls names fraudulently placed thereon to show a
    population entitling saloons to operate on the consent of a
    bare majority of the electors.

Same: TAXATION OF COSTS. The census enumerator is a proper
2  and necessary party to an action to correct the census and is
    properly taxable with costs; especially where the charge of
    fraud against him in making the enumeration is sustained
    over his denial and defense of the action.

*Appeal from Cass District Court.*— HON. A. B. THORNELL,
                        Judge.

                TUESDAY, FEBRUARY 11, 1908.

    THE opinion states the case.— *Affirmed.*

*J. B. Rockafellow,* for appellant.

*James B. Bruff* and *Julian Phelps,* for appellees Semo-
nes and Beech.

SHERWIN, J.— The original petition was filed in Au-
gust, 1905. It was alleged therein that James Stier was the
duly elected assessor of the city of Atlantic, but that he
refused to take the census thereof, and that the defendant

was duly appointed to take said census for the year 1905. That the other defendants constitute the executive council of the State of Iowa, and that Wm. B. Martin was the Secretary of State. It was further alleged in the petition and in the amendments thereto that the plaintiffs were resident taxpayers and voters within said city of Atlantic; that Wm. M. Semones was the president of the Anti-Saloon League of Cass County, and that said action was brought in behalf of said league as well as in their own behalf, and in behalf and at the request of many other citizens, residents and taxpayers in said city. That there were ten saloons in Atlantic, operating under a petition of consent effective only in case the city of Atlantic had five thousand or more population, and that, unless the population was shown to be five thousand or more, there was no probability that said saloons could operate or that a petition of consent could be obtained therefor. That the plaintiffs and those whom they represented were opposed to the sale of intoxicating liquors in said city; and that said Needles, for the purpose of making the population of Atlantic appear to be more than five thousand in the census for the year 1905, and in order that said saloons might continue to operate in said city, willfully and fraudulently added to and included in said enumeration the names of many persons who were not residents of said city and who could not properly be enumerated in the population thereof. That he willfully and fraudulently failed to follow and observe the laws and rules made for said census enumeration, and improperly enumerated and returned in said census enumeration the names of five hundred persons. That the census returned by him to the Secretary of State showed the city of Atlantic to have a population of five thousand, one hundred and eighty-one, but that said number included the names of the persons who had been fraudulently enumerated as aforesaid. It was still further alleged that, before commencing the action, the plaintiffs had demanded of the county attorney of Cass county and of the Attorney General of the

State that they bring an action to correct said census, but that both had refused to do so. The plaintiffs prayed that they be permitted to introduce evidence to show the fraud in the enumeration; that the census be set aside or corrected as the court should determine; that the executive council be enjoined from publishing any of the names improperly enumerated, and that a mandatory writ issue directing said council to have a new census taken.

Needles demurred to these pleadings, and upon the overruling thereof he answered, alleging that the census returned by him was honestly taken, and that any errors therein were mistakes or errors in judgment. He denied any intent to illegally pad the census, and alleged that the same was completed and returned before June 1, 1905, and before this suit was brought, and that the suit could not be maintained against him because he was not then in office. He challenged the right of the plaintiffs to maintain the action and the jurisdiction of the court. The executive council and Secretary of State answered, denying any knowledge of illegality in taking the census, and alleging want of jurisdiction to enjoin them from compiling and publishing the same as returned by the defendant Needles. Needles' motion to transfer the case to the law docket was overruled, and thereafter the case was tried to the court, and a final decree entered for the plaintiffs finding that the census was fraudulent and ordering certain names stricken therefrom. The decree also enjoined the executive council and the Secretary of State from publishing a list containing such names as a part of the census of Atlantic. The costs were taxed to Needles, and he alone appeals.

That the defendant Needles deliberately and fraudulently padded the census of Atlantic does not admit of doubt, 1. CENSUS: fraud and the only serious question in the case, as we in enumeration: action to view it, is whether the plaintiffs may maincorrect: parties. tain this action. The appellant contends that the act complained of was a public wrong, and that

an action for the redress thereof rests alone in the public and can only be brought and maintained by the authorities who by statute are given authority to represent the people. On the other hand, the appellees take the position that in a matter of public right any resident citizen or taxpayer may bring the action or be the relator; that the interest necessary to maintain the action is essentially the same as in mandamus or certiorari. It is undoubtedly the general rule that, where the right claimed to be in danger is not different from that enjoyed by the public generally, and the dangers which may be suffered are only those shared by the public, an action of injunction will not lie in favor of an individual. *Brady v. Shinkle,* 40 Iowa, 576. But while this is true, it does not necessarily follow that the rule should be applied to all classes of cases, or that it is controlling in this case. The general trend of modern authority is to the effect that courts of equity will grant injunctions to restrain an attempted wrong whenever it clearly appears that in no other proceeding can public or private interests be fully protected, and that the writ will issue at the instance of a private individual who shows he may suffer financial injury if the contemplated wrong be not enjoined, even though it may be made to appear that a part of the public may suffer in the same way or to the same extent. No absolute rule can be adopted for all cases, but each case must be determined very largely on its own peculiar facts and in the light of the general policy of the courts and of the State, as the latter is expressed in its statutory enactments. Thus prohibition has for many years been the rule in this State, and all legislation permitting a relaxation of such rule has adopted the policy also of giving to the individual citizen enlarged power in the direction of enforcing such laws, and of questioning all proceedings upon which the right to sell intoxicating liquors is based. The sale of intoxicating liquors in Atlantic could only be carried on after a statement of consent had been filed, canvassed and

found sufficient under section 2448 of the Code. In cities of five thousand or over such statement need only be signed by a majority of the voters residing in said city voting therein at the last preceding general election, while in cities having a population of less than five thousand, eighty per cent. of such voters is required. It is at once apparent, therefore, that the saloon interests in the city of Atlantic might be greatly interested in having its census show that it had a population of five thousand or over, and the residents of the city who were opposed to putting the mulct law in operation there would be as surely interested in the other direction. Section 2450 provides that the sufficiency of the statement of consent may be questioned by any citizen of the county, and section 2453 requires the county auditor to keep, for the inspection of any citizen who may desire it, all papers required by the preceding section to be filed with him, and makes his failure or refusal to do so punishable by a fine. The purpose of this and other legislation along the same line cannot be mistaken. Its policy is to give the individual citizen the freest and fullest opportunity to question the legality of the proceedings which shall set the mulct law in operation. Back of all this is the question of the population of a given city or town. Its population, as shown by the State census, determines the number of names that must be signed to the statement of consent.

No one will claim that the population of a community may be increased or diminished for the purpose of affecting rights under the statute in question, and yet, if it be held that a resident taxpayer of such community has no such interest in the question as will permit him to maintain an action to enjoin an illegal enumeration or to enjoin the retaining of names on the roll, fraudulently placed there, the efficiency of the restrictions placed around the mulct law will be greatly impaired. We are of the opinion that the general policy of the law in this respect warrants us in holding that the plaintiffs herein have the right to sue as citizens of Atlantic,

regardless of their other interests. See *State of Iowa ex rel.
Rice v. County Judge,* 7 Iowa, 186; *State ex rel. Byers v.
Bailey County Judge,* 7 Iowa, 390. In the latter case the
court was called upon to construe a statute which gave a
" party beneficially interested " the right to bring a man-
damus action to compel the canvass of votes cast at an elec-
tion, and it was said, " Having in view this pre-existing law
and the manifest necessity of the case, in those instances
which relate to public rights and interests, the expression
' party beneficially interested,' used in our statute   .   .   .
is not to receive a close construction, but is to be applied
liberally, and so as to promote the ends of justice." In
*Collins v. Ripley,* 8 Iowa, 129, the contest arose over the
relocation of the county seat, and an injunction was granted
restraining the canvass of the votes which might be cast on
the question. It was urged that the petitioner for the writ
was not entitled thereto, and it was said: " Collins com-
plains, in behalf of himself and others,   .   .   .   whom he
represents to be citizens and residents of St. Charles, the
present county seat, and avers that they are directly and
materially interested in the retention of it at that place. His
position as a citizen, and his interest as such in the public
welfare, entitled him to present a petition to restrain a
public officer from an act which would be a public wrong.
There is some analogy between this and the case of a relator
applying for a mandamus in a public matter, and it has been
held that one holding such relations might present an in-
formation for that purpose." It is also well to remember
in this connection that it was alleged, and the record shows,
that the plaintiffs were resident taxpayers at the time the
action was brought. In *Collins v. Davis,* 57 Iowa, 256, the
proceeding was by certiorari to correct an assessment. The
point was made that the plaintiff had no interest that would
authorize him to sue. The cases we have heretofore cited
were followed and their language approved. In *Cornell Col-
lege v. Iowa County,* 32 Iowa, 520, it was said: " We

·entertain no doubt that where the board of supervisors assume the exercise of powers not conferred upon them by law, or fail to discharge their duties, so as to involve a breach of trust, a court of equity will, at the instance of a taxpayer, afford relief." See, also, *Zorger v. Township of Rapids,* 36 Iowa, 180; *Wilkinson v. Van Orman,* 70 Iowa, 230; *Sperry v. Kretchner,* 65 Iowa, 525; *Cascaden v. Waterloo,* 106 Iowa, 673.

No one was interested in the census of Atlantic except its own citizens. The State authorities had no special interest therein, and, so far as we are advised, they have no authority to interfere with the enumeration of its citizens. And, unless those who were directly interested be held to be competent to act, all kinds of burdens might be imposed upon them by the fraudulent and dishonest acts of an officer. The right sought to be protected was not a mere political one. Rights to the quiet enjoyment of a home and to the full protection of the law are substantial rights which the courts will enforce at the instance of the party who has been or who is about to be wronged.

The appellant further urges that he was neither a proper nor a necessary party to the action, and that he should not be held for the costs thereof. It is true that he had made his return to the county auditor long before this suit was begun, and that his enumeration had been forwarded to the executive council. But he was the proper, and we think necessary, party to correct the census, if such correction should be ordered. If the district court had jurisdiction to investigate the correctness of the census upon proper application, it could undoubtedly have required a return of the roll for any purpose consistent therewith, and its order relative thereto could only be binding on the parties before it. The nature of the action and the prayer for relief required that the appellant be made a party. Moreover, he was charged with fraud in making the census, and, if the allegation should be proven,

2. SAME:
taxation
of costs.

he was the proper party to bear the burden of the costs of
the trial. He certainly should not be relieved of the con-
sequences of his act unless it is absolutely necessary. Again,
he answered and defended the case to the best of his ability
and with the assistance of able counsel, and he cannot now
escape the liability which follows such a course.

It is also said that this precise question was determined
by this court adversely to the appellee's claim when the tem-
porary order restraining the executive council from carrying
into effect the decree of the court below was dissolved on
motion. But such is not the fact. It was found that Need-
les had no special interest in the publication of the census,
and that he had appealed only from the judgment against him
for costs. No other question was determined so far as he
was concerned.

It is also insisted that there is not sufficient evidence
upon which to base the decree, but, as has already been inti-
mated herein, we think differently. We think the record
clearly sustains the decree.

The appellee filed an amended and additional abstract,
and the appellant filed a motion to strike this and to tax
the cost of printing the same to the appellee. The motion
to strike is overruled, and the motion to tax is sustained to
the extent of taxing one-fourth of the cost of printing same
to the plaintiffs, and it is otherwise overruled.

The judgment should be, and it is, *affirmed.*