### Denton, et al. v. Pulaski County, et al.

(Decided May 5, 1916.)

## Appeal from Pulaski Circuit Court.

1. Counties—Elections—Highway Bonds—Petition for Election—Failure to Name Day—Effect—Power of County Court.—A failure of the petition to name the day on which an election for highway bonds is asked under section 4307, Kentucky Statutes, providing

that the county court shall "make an order on his order book directing an election to be held in said county on some day named in said petition not earlier than sixty days after said application is lodged with the judge of said court," does not deprive the county court of the power to order an election to be held on some day within the limits fixed by the statute; and where such an election is ordered and properly advertised and regularly held, such failure will not render the election invalid.

2. Counties—Elections—Highway Bonds—Form of Question—Sufficiency.—Though the statute with reference to elections respecting a bond issue for road purposes provides that the question shall be submitted in the following form: "Are you in favor of issuing ..................... in bonds for the purpose of building roads and bridges?" —the omission from the ballots of the words "and bridges" is not misleading and will not render the election invalid.

3. Counties—Elections—Highway Bonds—Certificate of Result—Power of Election Commissioners.—The power of the county election commissioners respecting elections for the submission of public questions is confined to the certification of the number of votes cast for and against the proposition. When the result is thus certified and shows that the proposition has carried, the election commissioners are without authority to change the legal effect of this result by a certificate to the contrary.

4. Counties—Courts—Elections—Highway Bonds—Jurisdiction of County Court.—After an election on the question of issuing bonds for road purposes has been held, county courts are without jurisdiction to pass on the validity of the election or to dismiss the proceedings.

5. Counties—Elections—Highway Bonds—Result—Approval by Majority.—The result of an election on the question of issuing bonds for road purposes, under section 157a of the Constitution, is determined by the majority of the voters who participated in the election.

6. Pleading—Amendment.—In an action to enjoin a bond issue for road purposes, it is not an abuse of discretion to refuse to permit an intervener to file an amended petition asking for a mandamus requiring members of the fiscal court to publish a financial statement as required by statute.

7. Counties—Elections—Highway Bonds—Voters' Mistake of Law—Effect.—An election on the question of issuing road bonds will not be set aside on the ground that the voters labored under a mistaken view of law as to the number of votes necessary to carry the proposition.

8. Constitutional Law—Amendments—Proclamation and Publication of—Sufficiency.—Section 256 of the Constitution respecting amendments provides: "If it shall appear that a majority of the votes cast for and against an amendment at said election was for the amendment, then the same shall become a part of the Constitution of this Commonwealth, and shall be so proclaimed by the Governor, and published in such manner as the General Assembly

may direct." The legislature has not provided how an amendment shall be proclaimed or published. It has provided merely for the publication in two daily newspapers of general circulation of the result of the vote. After section 157a, known as "the good roads amendment," was adopted by a vote of the people, the Governor, in a formal message, notified both houses of the General Assembly of its adoption by a vote of the people and asked that they enact laws for the purpose of carrying the amendment into effect. The result of the vote on the amendment was also published in two daily newspapers of general circulation. Held, that in the absence of legislative action prescribing the particular manner in which an amendment shall be proclaimed and published, the foregoing steps constituted a substantial compliance with the above provisions of the Constitution.

J. P. HOBSON & SON, DENTON, KENNEDY & HAYS, BEN V. SMITH & SON and WM. CATRON for appellants.

O. H. WADDLE & SONS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This is a suit to enjoin the county of Pulaski and its fiscal court from issuing $300,000.00 worth of bonds for road purposes. The suit was originally brought by Lincoln Denton. During the course of the proceedings W. T. Trimble was permitted to intervene. The injunction being refused, plaintiff and the intervening petitioner appeal.

The election took place on December 18th, 1915, pursuant to an order of the county court, made at its regular October term, and based on a petition signed by the requisite number of legal voters and freeholders and theretofore filed in that court at its regular September term, 1915. On December 22nd, 1915, the election returns were duly made to the county election commissioners, who, after canvassing the same, certified that there were 2,095 votes in favor of the bond issue and 1,959 votes against it. They further certified "that under the law in this and the Constitution of this State the said proposition failed to carry." Thereafter the county court entered an order, reciting the fact that it appeared from the certificate of the election commissioners that there were 2,095 votes for the bond issue and 1,959 votes against the issue; and containing the following:

" * * *, and there not being a two-thirds majority in favor of the same, it appears that the proposition was lost. Case dismissed."

The validity of the election is attacked on numerous grounds, which we shall consider in the following order:

1.   Section 4307 of the Kentucky Statutes provides:

"Before the bonds authorized under this act shall be issued, the county court of the county, upon the petition of one hundred and fifty legal voters who are freeholders of the county, shall at the regular term thereof, after receiving said petition, make an order on his order book directing an election to be held in said county on some day named in said petition not earlier than sixty days after said application is lodged with the judge of said court."

In this case the petition did not specify the day but asked for the calling of an election on the ............ day of ................................, 1915. It is argued that the county court has no jurisdiction to call an election except on the day named in the petition, and, no day having been named, the order by which the county court fixed the day was invalid and did not authorize the holding of a legal election on that day. It will be observed that the statute does not declare in express terms that the petition shall fix the day of the election, but merely provides that the county court shall make an order directing the election to be held on some day named in the petition. We, therefore, conclude that the purpose of the statute was to confer upon the petitioners the right to name the day within the limits fixed by the statute, but if they fail to avail themselves of this right and leave the day blank, as was done in this case, such failure does not deprive the county court of the power to fix the day. Hence, if he names a day for the election not later than sixty days after the application is lodged, and the election is properly had and regularly held, the mere fact that no day was named in the petition will not render such an election invalid.

2.   The statute provides for the submission of the question of issuing bonds in the following form: "Are you in favor of issuing.................................in bonds for the purpose of building roads and bridges?" Section 4307 of the Kentucky Statutes. On the ballots issued in the election in contest the question appeared in the following form: "Are you in favor of issuing $300,000.00 in bonds for the purpose of building roads?" It is, therefore, insisted that as the ballots did not conform to the statute the question was not submitted in proper form,

and that for that reason the election is invalid. Section 157a of the Constitution authorizes the pledging of the credit of the Commonwealth to any county "for public road purposes;" and further provides that any county may be permitted to incur an indebtedness not in excess of five per centum of the value of the taxable property therein, "for public road purposes in said county." A bridge is nothing more than that part of a road which crosses a stream, and the power to issue bonds for public road purposes necessarily carries with it the power to build bridges, which are a part of the road. Hence the statute is a correct legislative interpretation of the power conferred by the Constitution, and its only effect is to make that power more specific. Since a vote for bonds for building roads is in effect a vote for bonds for building bridges, it is clear, we think, that the form in which the question was printed was not misleading and affords no reasonable ground for holding the election invalid.

3. It is next insisted that as the election commissioners certified that the proposition failed to carry, their certificate cannot be collaterally attacked, and, therefore, precludes the fiscal court from issuing the bonds. In the very nature of things there is no such person as a successful candidate in an election on a public question, and, therefore, no one to whom a certificate of election may be awarded. We, therefore, conclude that the election commissioners have no power to pass on questions of law and declare whether or not a public question has been carried. Their power is confined to the certification of the result, and by the result we mean the number of votes cast for and against the proposition. When the result as thus certified shows that the proposition has carried, the election commissioners are without authority to change the legal effect of this result by a certificate to the contrary.

4. Another contention is that the order of the county court, declaring that the proposition had been lost and dismissing the case, put an end to the proceedings and deprived the fiscal court of the power to issue the bonds. While the statute authorizes the county court to order an election when a proper petition therefor has been filed, it contains no provision conferring authority on that court to pass on the validity of an election or to dismiss the proceedings. After an election has been

regularly held, the result properly certified and the proposition has carried, the fiscal court alone has the power and authority, within the constitutional and statutory limitations, to issue the bonds authorized by the election, and its right to proceed further and issue the bonds cannot be interfered with by the county court, but only by a court of general jurisdiction. Since the county court was without jurisdiction to enter the order in question, it follows that the order was void and did not preclude further action by the fiscal court.

5. The election itself is also attacked on the ground that the proposition did not receive the assent of two-thirds of the voters on the question. Recently we have had occasion to consider this question in a number of cases, and have reached the conclusion that, under section 157a of the Constitution, an indebtedness for public road purposes may be authorized by a majority of the voters of the county who participate in the election upon that question. Gatton v. Fiscal Court of Daviess County, 169 Ky. 425, 184 S. W. 1; Armstrong v. Fiscal Court of Carter County, 169 Ky. 433, 184 S. W. 4; Cleary v. Pieper, et al, 169 Ky. 434, 184 S. W. 4.

6. The intervening petitioner, W. T. Trimble, complains of the action of the trial court in refusing to permit him to file an amended petition praying for a writ of mandamus compelling the fiscal court to publish a financial statement, as required by the statute. It is claimed that since the object of the intervener was to get information for the purpose of determining whether or not the proposed issue, together with the past indebtedness of the county, would exceed the constitutional limitation of five per cent of the taxable property of the county, the relief asked was so intimately connected with the proposed bond issue that the court should have permitted the amended petition to be filed. Clearly the right to a mandamus presented an issue purely collateral to those involved in this action. That being true, the intervener should have filed a separate action for a mandamus, or if the time did not permit and he desired to raise the question, he should have presented the issue by proper pleading and have taken proof on the question. Had the court permitted the amended petition to be filed, it would have been necessary to postpone this proceeding for the purpose of trying a mere collateral issue. We, therefore, conclude

that the court did not abuse a sound discretion in refusing to permit the amendment to be filed.

7. We are asked to adjudge the election invalid on the ground that all the voters who participated therein acted under the mistaken belief that the proposition had to be carried by two-thirds instead of a majority of the votes. It is argued that such an election is not fair and equal and is contrary to public policy. Here the election was properly called and properly advertised. It is not contended that any of the voters were deprived of the right of suffrage. On the contrary, all who desired to vote were given full opportunity to do so. The public policy of the State with reference to elections is fixed by those provisions of the Constitution and statutes regulating elections. When those provisions have been complied with and the election has been properly ordered and held, and full opportunity afforded every voter to express his preference respecting the proposition submitted, the courts are not at liberty to set the election aside on the ground that the voters labored under a mistake of law concerning the number of votes necessary to carry or defeat the proposition.

8. Lastly, it is insisted that section 157a of the Constitution has never become effective and that no valid election can be held thereunder. Amendments to the Constitution are controlled by section 256 of that instrument, which is as follows:

"Amendments to the Constitution—How Adopted.— Amendments to this Constitution may be proposed in either House of the General Assembly at a regular session, and if such amendment or amendments shall be agreed to by three-fifths of all the members elected to each House, such proposed amendment or amendments, with the yeas and nays of the members of each House taken thereon, shall be entered in full in their respective journals. Then such proposed amendment or amendments shall be submitted to the voters of the State for their ratification or rejection at the next general election for members of the House of Representatives, the vote to be taken thereon in such manner as the General Assembly may provide, and to be certified by the officers of election to the Secretary of State in such manner as shall be provided by law, which vote shall be compared and certified by the same board authorized by law to compare the polls and give certificates of elec-

tion to officers for the State at large. If it shall appear that a majority of the votes cast for and against an amendment at said election was for the amendment, then the same shall become a part of the Constitution of this Commonwealth, and shall be so proclaimed by the Governor, and published in such manner as the General Assembly may direct. Said amendments shall not be submitted at an election which occurs less than ninety days from the final passage of such proposed amendment or amendments. Not more than two amendments shall be voted upon at any one time. Nor shall the same amendment be again submitted within five years after submission. Said amendments shall be so submitted as to allow a separate vote on each, and no amendment shall relate to more than one subject. But no amendment shall be proposed by the first General Assembly which convenes after the adoption of this Constitution. The approval of the Governor shall not be necessary to any bill, order, resolution or vote of the General Assembly, proposing an amendment or amendments to this Constitution.''

It will be observed that the above section provides that if it shall appear that a majority of the votes cast for and against an amendment at the election was for the amendment, then the same shall become a part of the Constitution of this Commonwealth, and shall be so proclaimed by the Governor, and published in such manner as the General Assembly may direct.

The ground on which section 157a, popularly known as ''the good roads amendment,'' is attacked, is that it has never been proclaimed or published. The same question was before the Texas Court of Appeals in the case of Wilson v. The State, 15 Texas App. 150. In that State the Constitution, after providing the necessary steps to be taken in proposing and adopting amendments, contains the following provision:

''If it shall appear from said return that a majority of the votes cast have been cast in favor of any amendment, the said amendment so receiving a majority of the votes cast shall become a part of this Constitution, and proclamation shall be made by the Governor thereof.'' Section 1, Article XVII.

In construing this provision the court held that it was the ascertained majority of the vote of the people, and not the proclamation of the Governor, which gives

force and effect to an amendment. Whether or not the same rule applies in this State we deem it unnecessary to decide. The Legislature has not provided how an amendment shall be proclaimed or published. It has provided merely for the publication in two daily newspapers of general circulation of the result of the vote on the amendment. Section 1459 of the Kentucky Statutes. The result of the vote on the amendment in question was published in the Louisville Courier-Journal and the Louisville Herald, two daily newspapers of general circulation. Furthermore, the Governor, in January, 1910, wrote a message to the General Assembly in which he called attention to the fact that the amendment in question had been adopted by a vote of the people and asked that they enact laws for the purpose of carrying the amendment into effect. This message was published in the journals of both Houses (House Journal 1910, page 614; Senate Journal 1910, page 840). In the absence of legislative action prescribing the particular manner in which an amendment shall be proclaimed and published, we conclude that the foregoing steps constituted a substantial compliance with the Constitution.

Perceiving no ground upon which the proposed bond issue should be enjoined, it follows that the relief prayed for by plaintiffs was properly denied.

Judgment affirmed.