HARRY ABBOTT et al., Appellants, v. IOWA CITY et al., Appellees.

No. 44158.

JANUARY 18, 1938.

Popham, Toomey & Davis, Dutcher, Ries & Dutcher, and Lane & Waterman, for appellants.

Stipp, Perry, Bannister & Starzinger, D. C. Nolan, and Robert L. Larson, for appellees.

KINTZINGER, J.—The plaintiff, Harry Abbott, is a resident, citizen, elector, taxpayer, and consumer of electricity in Iowa City. The intervenor, Iowa City Light & Power Company, is the owner and operator of a gas plant and an electric distribution system in the city of Iowa City, and as such supplies gas and electricity to Iowa City and its inhabitants. Intervenor, as owner of the gas plant, is also a property owner, taxpayer, and consumer of electricity in Iowa City.

Its franchise for distributing electricity to the city of Iowa City expired on January 11, 1934. Since that time it has furnished the city and its inhabitants with electricity at rates regulated and fixed by the city. The Iowa City Light & Power Company is the only person or concern engaged in supplying electric light and power to Iowa City and its inhabitants and possesses the only facilities now available for so doing.

In January, 1934, the city of Iowa City made an application to the Federal Emergency Administration of Public Works for a free public grant of funds to be used toward the construction of a municipal light and power plant in Iowa City. This grant has since been allowed in the sum of $412,650, which is available toward the payment of said plant.

The city council of Iowa City had refused to order an election for the establishment of a municipal plant in that city. Thereupon petitions signed by the requisite number of property owners were filed with the mayor of Iowa City requesting him to submit "the question of establishing a city-owned and city-operated electric light and power plant and distribution system," to the voters at a special election as authorized by section 6132 of the Code of 1931. Thereafter in March, 1934, the mayor issued a notice for a special election called for April 17, 1934,

reciting therein that the election was called pursuant to petitions filed by the requisite number of property owners of Iowa City.

Between that time and the date of election, a heated contest for and against the proposition was conducted through the press and otherwise.

The result of the election showed 2959 votes in favor of the proposition and 2804 against. The city council then in power refused to establish a plant pursuant to the mandate of the election and refused to authorize the execution of a contract therefor. About six months after the refusal of the then council to provide for the establishment of a plant, an ordinance was adopted by a new administration providing for the establishment of a municipal plant.

On January 8, 1934, the city of Iowa City made an application to the Federal Emergency Administration of Public Works for a loan and grant to construct a municipal electric plant and distribution system in Iowa City. This application was later withdrawn, and on June 17, 1935, the city made another application asking for a grant of 45 per cent of the cost of the labor and material in connection with the proposed municipal plant. On October 7, 1935, an agreement was entered into between the Federal Emergency Administration of Public Works and the city of Iowa City under which the Federal Emergency Administration of Public Works offered to make an outright grant of 45 per cent of the cost of the project, such grant, however, not to be in excess of $413,000. Thereafter, on March 6, 1936, the city of Iowa City entered into a contract with the Federal Emergency Administration of Public Works for a grant in the approximate sum of $412,650, the city proposing to raise the balance of the funds from the sale of revenue bonds under the Simmer law in an amount not to exceed $917,000. The defendant city concedes its intention of paying more than the sum of $917,000 in the construction of the project in the event the federal grant is received. Engineering and legal services were then engaged preliminary to the execution of a contract for the establishment or construction of a plant.

Plaintiff, Abbott, commenced this action in his own behalf and in behalf of all other residents, taxpayers, and users of electrical energy in the defendant city. The action was commenced in equity to restrain the city from proceeding to construct a municipal plant upon the alleged ground that the election was

invalid and conferred no authority upon the city for the establishment thereof. The lower court held that the appellants were not entitled to the relief demanded and denied the application for an injunction. Plaintiff, Abbott, and Iowa City Light & Power Company appeal. Additional facts are stated in the opinion.

■■■ I. Appellants contend that the court erred in holding that they had no legal rights which could be violated and were therefore not entitled to the relief asked. One of the reasons urged as showing that the Iowa City Light & Power Company had no legal rights that could be violated is that its franchise for distributing electrical energy in Iowa City had expired in January, 1934, and is therefore no longer interested.

It is the general rule of law that, although the franchise of a public utility company has expired, it must nevertheless continue to serve the city under contract or otherwise as long as no other source of electricity is available, or until a municipal or other plant is established. A utility company has the same rights it had under its franchise, except that it may be compelled to discontinue using the public streets after the expiration of reasonable notice so to do. City and County of Denver v. Denver Union Water Company, 246 U. S. 178, 38 S. Ct. 278, 62 L. Ed. 649; Iowa City, Iowa, et al. v. Iowa City Light & Power Company et al., 8 Cir., 90 F, 2d, 679, 112 A. L. R. 618; Cedar Rapids Water Company v. City of Cedar Rapids, 118 Iowa 234, 91 N. W. 1081; Miller et al. v. Incorporated Town of Milford et al., 224 Iowa 753, 276 N. W. 826.

The undisputed evidence also shows that after the expiration of its electric franchise, the rates for electrical energy were fixed by the city council, and thereafter and at the present time the city of Iowa City and its inhabitants, by arrangement between the city and the company, are being furnished with electrical energy by said company. Appellants therefore claim to be entitled to use the streets of the city until a reasonable time after receiving notice from said city to vacate.

The evidence also shows without dispute that, in addition to its electric light plant, the Iowa City Light & Power Company is also the owner of the Iowa City gas plant, which was also operated by the Iowa City Light & Power Company under a franchise which expired January 13, 1934, and as such is a consumer of electrical energy. The record also shows that the Iowa

City Light & Power Company is the largest taxpayer in Iowa City.

Appellees contend that, in order to maintain this suit, appellants must show definite and certain legal damages suffered by them and that no such damages have been shown.

To authorize a contract for the construction or acquisition of a municipal light and power plant, an election on the proposition must first be had and the proposition be carried by a majority of the legal electors voting thereon. Without an election the fundamental right to enter into the contract does not exist. A holding that a citizen and taxpayer, or all the citizens in the city, cannot question the right of the city council to enter into such a vast undertaking as the construction of a municipal light and power plant, *unless special personal damages are shown*, would practically result in a situation where no one would have a right to question the rights of the council's illegal act in so doing.

In discussing the right to enjoin such proceedings, Judge Dillon in his work on Municipal Corporations, 5th Ed., Par. 1579, says:

"In this country, the right of property-holders or taxable inhabitants to resort to equity to restrain municipal corporations and their officers from transcending their lawful powers or violating their legal duties in any mode which will injuriously affect the property-holders or taxpayers—such as making an unauthorized appropriation of the corporate funds, or an illegal or wrongful disposition of the corporate property, or levying and collecting void and illegal taxes and assessments upon real property under circumstances presently to be explained—has, without the aid of statute provision to that effect, been affirmed or recognized in numerous cases in many of the states. It is the prevailing, we may now add, almost universal doctrine on this subject. It can, we think, be vindicated upon principle, in view of the nature of the powers exercised by municipal corporations and the necessity of affording easy, direct, and adequate preventive relief against their misuse. It is better that those immediately affected by corporate abuses be armed with the power to interfere directly in their own names than to compel them to rely upon the action of a distant state officer. The equity jurisdiction may, in such cases, usually rest upon fraud, breach of

trust, multiplicity of suits, or the inadequacy of the ordinary remedies at law."

As it is necessary to receive the consent of the electors of a city before entering into a contract for the construction of a municipal plant, it would be a strange corollary on justice to hold that the very people, whose consent must first be obtained, would have no right by injunction to question the unlawful acts of their own representatives in openly and flagrantly violating the law. This question has been discussed in Iowa, and the rule was announced in early cases that injunctive relief can be obtained by citizens where their representatives in the council violate their duties under the law. State v. County Judge, 7 Iowa 186; State v. Bailey, 7 Iowa 390; Collins v. Ripley, 8 Iowa 129; Rice v. Smith, 9 Iowa 570.

■■■ Courts of equity will grant injunctions whenever it clearly appears that in no other proceeding can public or private interests be fully protected. Semones v. Needles, 137 Iowa 177, 114 N. W. 904, 14 L. R. A. (N. S.) 1156, 15 Ann. Cas. 1012; Cornell College v. Iowa County, 32 Iowa 520; Collins v. Davis, 57 Iowa 256, 10 N. W. 643; Hospers v. Wyatt et al., 63 Iowa 264, 19 N. W. 204; Carthan v. Lang et al., 69 Iowa 384, 28 N. W. 650; Snyder v. Foster et al., 77 Iowa 638, 42 N. W. 506; Brockman v. City of Creston, 79 Iowa 587, 44 N. W. 822; Cascaden v. Waterloo, 106 Iowa 673, 77 N. W. 333.

While this question is not specifically discussed in some cases, it is assumed in others that injunctive relief can be obtained in this class of actions. Iowa Electric Light & Power Company v. Grand Junction, 216 Iowa 1301, 250 N. W. 136; Iowa-Nebraska L. & P. Co. v. Villisca, 220 Iowa 238, 261 N. W. 423; Northwestern L. & P. Co. v. Grundy Center, 220 Iowa 108, 261 N. W. 604; Greaves v. City of Villisca, 217 Iowa 590, 251 N. W. 766; Wyatt v. Manning, 217 Iowa 929, 250 N. W. 141.

In Semones v. Needles, 137 Iowa 177, loc. cit. 180, 114 N. W. 904, 905, 14 L. R. A. (N. S.) 1156, 15 Ann. Cas. 1012, this court said:

"It is undoubtedly the general rule that, where the right claimed to be in danger is not different from that enjoyed by the public generally, and the dangers which may be suffered are only those shared by the public, an action of injunction will not lie in favor of an individual. * * * But while this is true, it

does not necessarily follow that the rule should be applied to all classes of cases, or that it is controlling in this case. The general trend of modern authority is to the effect that courts of equity will grant injunctions to restrain an attempted wrong.''

In Collins v. Davis, 57 Iowa 256, loc. cit. 258, 10 N. W. 643, 644, this court said:

''It may be conceded that in some other States a rule has been adopted which would deny the right of the plaintiff to maintain this action. [Citing cases from New York and Kansas.] These cases hold it requires some individual interest distinct from that which belongs to every inhabitant of a town or county to give the party complaining a standing in court, where it is an alleged delinquency in the administration of public affairs which is called in question, and that the fact of owning taxable property is not such a peculiarity as takes the case out of the rule. *A different rule, however, has been adopted in this state.* In State ex rel. Rice v. Smith, 7 Iowa 186, and State ex rel. Byers v. Bailey, 7 Iowa 390, it was held that in a matter of public right any citizen may be relator in an application for a writ of *mandamus*. In Collins v. Ripley, County Judge, 8 Iowa 129, it was held that a citizen and resident of a county interested in the public welfare may petition for and obtain an injunction to restrain a public officer from the commission of an act which would be a public wrong. In Rice v. Smith, County Judge, 9 Iowa 570, it was held that persons who are citizens, voters, and taxpayers of a county may be parties plaintiff in an action to restrain by injunction the expenditures of county moneys by the county judge, in the erection of a courthouse at a place which is not the county seat of the county. In Cornell College v. Iowa County, 32 Iowa 520, this court employed the following language: 'We entertain no doubt that where the board of supervisors assume the exercise of powers not conferred upon them by law, or fail to discharge their duties, so as to involve a breach of trust, a court of equity will, at the instance of a taxpayer, afford appropriate relief.' The city council of the city of Keokuk is intrusted with the management of its fiscal and municipal concerns. The petition alleges that the city council has acted illegally, and in excess of its authority in the reduction of the tax in question. Of course, it cannot be expected that the council will institute any proceeding to review and

reverse its own action. Unless, therefore, a citizen and taxpayer of the city can invoke judicial aid, no remedy is afforded, and the council may violate the law with impunity. If the act complained of was one imposing an illegal tax upon the plaintiff, he might safely wait until an attempt to enforce the tax should be made. But the act complained of here imposes no tax. It remits a tax to which it is alleged the city is entitled, and thus diminishes the revenue of the city. Unless a taxpayer can interpose for the prevention of such wrong, the city is absolutely without remedy. We are of opinion that the first and second grounds of demurrer were properly overruled.'' (Italics ours.)

In an opinion written by Chief Justice Stiger in Miller et al. v. Incorporated Town of Milford, 224 Iowa 753, loc. cit. 769, 276 N. W. 826, 834, this court after an exhaustive consideration of this question, said:

''The primary purpose of the mandatory requirement for competitive bidding is to prevent fraud and collusion and for the protection of public funds. We stated in Iowa Electric Light & Power Company v. Town of Grand Junction, 216 Iowa 1301, 1303, 250 N. W. 136, 137: 'This statute (section 6134-d5) was undoubtedly enacted for the purpose of obtaining competitive bidding and to enable municipal corporations to secure the best bargain for the least money.' Suppose a municipality, without providing for competitive bidding, entered into a contract for the construction of an electric plant for the price of $100,000, the cost to be paid solely out of the earnings, and that the reasonable price for the plant was $50,000. To hold that a citizen and a user of electricity did not suffer an invasion of an equitable or legal right would be illogical and unsound. The citizens of Milford voted to establish the municipal plant. It was for their benefit. In effect the council was the trustee, and the citizens the beneficiaries of the plant who, in our opinion, had the right to institute a suit to restrain the corporation and its officers from violating their duties, from abusing corporate powers, and misusing their power in entering into a contract without competitive bidding, which is a wholesome mandatory requirement for the benefit of such citizens. The excessive cost of the plant, which consumers must pay, would postpone the time the city would obtain title to the plant. It cannot be said that consumers would not be benefited by an earlier acquisition of own-

ership of the plant, free from debt, and the fixing of rates based on a debt-free plant. The securing of the plant at the lowest price possible through the mandatory requirements of the statute is of substantial interest to the citizens of the town. If appellants' contention were sustained, no recourse could be had to the courts for relief from void, extravagant, ultra vires action of the city council, because there would be no one who had authority to institute the suit to prevent a public wrong, except the state in certain circumstances. We think there is no principle of law that would justify a decision that would bring about such a result. The public welfare requires that such right be lodged in citizens of a community. See, Dillon, Municipal Corporations (5th Ed.) §§1579, 1580; Semones v. Needles, 137 Iowa 177, 114 N. W. 904, 14 L. R. A. (N. S.) 1156, 15 Ann. Cas. 1012; Collins v. Ripley, Judge, 8 Iowa 129. We hold plaintiffs had the right to challenge the validity of the construction contract.''

As the reasons for the conclusion therein reached are quite fully considered in that case, we deem it unnecessary to review them further here and reference is made to that case for a further consideration hereof. Our ruling upon this question is controlled by our ruling in that, and we are therefore impelled to hold that the lower court erred in holding that appellants had no legal right which could be violated under the facts herein.

■■■ II. Appellants also contend that the court erred in not holding the election void because the petitions filed with the mayor, requesting him to call the election, failed to state the maximum amount to be expended for the establishment or acquisition of the plant.

Section 6132 of the Code of 1931 provides that:

''The council may order any of the questions provided for in sections 6127 to 6131, inclusive, submitted to a vote at a general or municipal election or at one specially called for that purpose, or the mayor shall submit said question to such a vote upon the petition of twenty-five property owners of each voting precinct in a city, or of fifty property owners of any incorporated town.''

Section 6134-d3 requires that:

"Such proposition *when submitted to an election* shall state the maximum amount which may be expended for the establishment, construction, or acquisition of such plant." (Italics ours.)

The record shows that the city council had refused to order the question submitted to a vote at an election and that, upon such refusal, petitions were duly filed with the mayor, signed by the requisite number of electors, requesting the submission of the question of establishing. a municipal electric light plant to the voters of Iowa City at a special election, said petition being as follows:

"To the Honorable Mayor of Iowa City, Iowa:

"We, the undersigned property owners * * * petition that you submit to the voters of Iowa City, at a special election the question of establishing a city-owned and city-operated electric light and power plant and distribution system.

"We understand that such proposition, when submitted to the voters, shall state the maximum amount which may be expended for the establishment, construction, or acquisition of such plant. (Code of Iowa, Section 6134-d3).

"We understand that such plant, if established, will be paid for out of future earnings and not out of taxes. (Code of Iowa, Section 6134-d1)."

After due notice of a special election was given, the following proposition was submitted to the voters at such election held on April 17, 1934, to wit:

"Shall the City of Iowa City, Iowa, establish, erect, extend, maintain and operate within or without its corporate limits, an electric light and power plant, with all the necessary poles, wire, machinery, apparatus and other requisites of said plant; the maximum amount which may be expended for the establishment, construction, or acquisition of such plant shall be $917,000 to be paid for out of the future earnings of said plant, and as provided by sections 6134-d1 to 6134-d7, inclusive, of the Code of Iowa, 1931, as amended by * * * Chap. 74—45 G. A. * * * 45th General Assembly, Special Session?"

It will be noted that under the provisions of section 6132 of the Code, two methods of initiating the procedure for securing

an election upon the question of establishing or acquiring a municipal plant are provided.

The first is initiated by the city council. Under it the questions to be submitted are necessarily framed and determined by the city council. In such event, the questions as to the kind of plant to be established and the maximum amount to be expended therefor, as provided in section 6134-d3, must be set out in the *questions submitted* at the election.

The second is initiated by the filing of a petition with the mayor, signed by twenty-five property owners of each voting precinct in the city. In such event, the mayor shall submit the question to a vote of the electors.

Appellants contend that because section 6134-d3 requires that the proposition submitted to the voters contain a statement showing the maximum amount to be expended in the construction of the plant, *such statement must also be included in the petition filed with the mayor by the property owners.*

Sections 6134-d1 to 6134-d7, inclusive, are known as the Simmer law and were enacted after the adoption of section 6132. The Simmer law authorizes payment for the establishment of a municipal plant out of the earnings of the plant. Section 6134-d3 requires the question of establishing or acquiring a municipal plant under the Simmer law to be submitted to the people at the election, together with a statement of "the maximum amount which may be expended for the establishment, * * * of such plant."

As no provision is made in either section 6132 or section 6134-d3 authorizing the mayor to fix the maximum amount to be expended in establishing or acquiring the plant, appellants contend that the statement showing the "maximum amount to be expended" should be contained in the petition filed with the mayor, and that a failure of said petition to state the "maximum amount to be expended" is fatal to the election and renders it void. Appellants' contention is that no discretion is lodged in the mayor to determine the maximum amount to be so expended, and that he has no legal right to insert the amount in the ballot.

It may be true that, if a petition initiating proceedings of this kind was required by statute to contain a statement of the maximum *cost* of the construction of the plant, a failure to include such statement in the petition might be fatal; but there

is no Iowa statute requiring that such statement be contained in the petition filed with the mayor.

The principal case, among others, relied upon by appellants in support of their contention is O'Keefe v. Hopp, 210 Iowa 398, 228 N. W. 625. In that case a petition was filed with the county board of supervisors requesting the submission at an election of the question of constructing a bridge across the Missouri River. The statute, section 4678 of the Code of 1927, relating to the question involved in that case provides that:

"Ten per cent of the legal voters, * * * of any county bordering upon a stream * * * which forms the boundary line of this state, may petition the board of supervisors to submit to the voters the question whether such county shall be authorized to *construct and maintain* a * * * bridge * * * across such boundary line river. *Said petition shall state the amount to be expended for said purpose.*" (Italics ours.)

In that case, 210 Iowa 398, loc. cit. 403, 228 N. W. 625, 628, this court said:

"Appellants assert * * * that appellees' petition to the supervisors was not sufficient, under the statutes above quoted. Many reasons are assigned as to why the application is inadequate. So far as this appeal is concerned, we find it necessary to consider but one of them. Reference is made to the indefiniteness and incompleteness of the petition.

"It is contemplated by the statute that the bridge shall be *constructed and maintained.* Undoubtedly the legislators realized that construction without maintenance would be impractical and contrary to the public welfare. Maintenance, then, under the legislation, is co-ordinated with construction. Because an election is contemplated, the legislature sought to enlighten the voters concerning the amount to be expended for construction *and maintenance.* The words 'said purpose,' contained in the last sentence of section 4678, refer back to the antecedent '*construct and maintain*'. * * *

"Wherefore, it is important for the voter to know the extent of the maximum cost, not only for *construction,* but *maintenance,* as well. * * * What is to be the maximum yearly expenditure for maintaining the bridge? No information upon this subject is furnished in the petition. In fact, that document said nothing at all concerning the cost of maintenance. * * *

"Clearly, the petitioners contemplated that the $400,000 to be spent was entirely for construction purposes. Obviously, then, the maintenance cost was to be something other than and additional to the construction outlay. Cost contemplated for maintenance was not stated in the petition, as required by section 4678, supra. According to said application and the record presented, the one mill authorized by statute for construction and maintenance would produce barely enough to pay the construction cost * * * without supplying any funds whatever for maintenance expenses. * * *

"Understanding for intelligent voting cannot be had without these essential facts. They are so important that a statement of them should be set forth in the petition and the ballot, as contemplated by the various statutory provisions above quoted. *Lacking those statutory essentials,* the petition was defective. That defect was of such importance that substantial compliance was not made with the statute. * * * Without a legal petition before them, mandamus will not compel the supervisors to call the election." . (Italics ours.)

Appellees contend, however, that section 6132 authorizing the initiation of these proceedings by a petition filed with the mayor, does not require that such petition state the maximum amount to be expended in establishing the plant. The only statutory requirement for such a statement is section 6134-d3, which requires that it must be contained in the question *submitted to the voters,* but it is conceded that such a statement was included on the ballot at the election.

The record shows without dispute that in December, 1933, the city council of Iowa City engaged the services of an engineer to secure an estimate of the cost of constructing a municipal plant in that city; it also shows that this information was furnished to the city in January, 1934, in a report filed with the city by said engineer, and that such report shows that the cost of a complete electric plant would be $917,000. The petitions requesting the mayor to call the election were filed with him in January, 1934, and the record shows that he used the information as to the maximum cost of the plant shown by the report of the engineer employed by the city for that purpose.

Appellees contend that, as the statutes do not require a statement of the maximum amount to be expended to be set out

in the petition filed by the property owners, the election held thereunder cannot be held void if the statutory requirements as to the maximum amount to be expended *is contained in the proposition submitted to the voters at the election.*

Although the petition filed with the mayor did not contain a statement of the maximum cost of the plant, it did contain the following statement:

''We understand that such proposition, when submitted to the voters, shall state the maximum amount which may be expended for the establishment, construction or acquisition of such plant. (Code of Iowa, Section 6134-d3).''

This statement in the petition clearly indicated that the signers contemplated that the maximum amount to be expended would be stated in the proposition submitted at the election. The proposition submitted to the voters did contain the statement that ''the maximum amount which may be expended for the establishment, * * * of such plant shall be $917,000 to be paid for out of the future earnings of the plant.'' This amount corresponds exactly with the report made by the city's expert engineer as to the maximum cost of the plant.

Appellees contend that this action on the part of the mayor was purely ministerial and that all he did in preparing the ballot was to get this figure from the city records and insert it in the ballot, and that in so doing he performed only a ministerial act. Neither section 6132 nor section 6134-d3 requires that the maximum amount to be expended shall be stated in the petition filed with the mayor. It therefore appears that the statements contained in the *petition* filed with the mayor complies with the requirements of the statutes. Courts will be slow in holding a petition invalid where the statement made therein comply with the specific requirements of the statute. Piuser v. Sioux City, 220 Iowa 308, 262 N. W. 551, 100 A. L. R. 1298; State v. Rowe, 187 Iowa 1116, 175 N. W. 32; Mapleton v. Iowa L. H. & P. Co., 206 Iowa 9, 216 N. W. 683; Denton v. Pulaski County, 170 Ky. 33, 185 S. W. 481; Pendleton v. Letcher County Court, 194 Ky. 688, 240 S. W. 358.

The identical question under consideration is similar to that involved in incorporated Town of Mapleton v. Iowa L. H. & P. Co., 206 Iowa 9, 216 N. W. 683. That case also involved a petition filed pursuant to section 6132 of the Code submitting the

question of granting a franchise for the construction of a light plant in Mapleton. The petition filed with the mayor in that case was silent as to the duration of the franchise. The court there held the election valid although the petition did not contain all of the proposed terms of the franchise. In that case we said (206 Iowa 9, loc. cit. 20, 216 N. W. 683, 687) :

"In the case at bar, the town council did nothing, in the first instance. The mayor did act, under the mandate of section 721, and submitted the proposition in understandable English. The very terms of the contract proposed were on the ballot offered the voter. He knew that, if Leitzen should be given a vote sufficient to grant the franchise, he would have the right to construct and operate a plant for twenty-five years, without any special privilege granted to him, other than to sell electric current and to use the streets, alleys, etc., for his poles and wires. The elector also knew that, under such franchise, Leitzen would be governed by section 725 of the 1913 Supplement to the Code, under which the town had a right to regulate the rates, and that, under section 775, Code of 1897, the town council had the right to pass general regulations, providing for the location of the poles, wires, etc., in the streets and public places of the town."

That case, like the case at bar, differs from O'Keefe v. Hopp, 210 Iowa 398, 228 N. W. 625, and others like it, *where the statutory requirements of the petition were not complied with.* In that case the mandatory terms of the statute as to the requirements of the petition were not met. In the case at bar there is no statutory requirement that the petition contain a statement of the maximum amount to be expended in the construction or acquisition of the plant.

A careful reading of section 6132 and section 6134-d3 will show that no provision is contained in either requiring the petition filed with the mayor to state the maximum amount to be expended. Section 6132 provides that:

(1) The council may order any of the questions submitted to a vote at a general or special election; or

(2) The mayor shall submit said question to such a vote upon the petition of twenty-five property owners.

Section 6127 to section 6131 provide for the establishment of municipal plants or the granting of franchises. But none of them require that a statement of the maximum cost of the plant

be contained in the petition filed with the mayor requesting an election.

Section 6134-d3 simply provides that nothing contained in section 6134-d1 to section 6134-d2 (the Simmer law) shall be construed as authorizing an establishment of a plant without an election as required by section 6131, and such proposition *when submitted to an election shall state the maximum amount which may be expended* for the establishment, construction or acquisition of such plant. This clearly indicates that a statement as to the maximum amount to be expended shall be contained only in the proposition submitted to the voters at the election, and that the specific statutory requirements were all complied with in the instant case.

For the reasons hereinabove expressed, we are constrained to hold that the lower court did not err in failing to hold the election void because the maximum amount to be expended was not set out in the petition filed with the mayor.

██ III. Appellants also contend that the election is void for duality because it permitted the electors to vote either for the acquisition of an existing plant or the construction of a new one. This question is fully discussed in the case of Keokuk Water Works Co. et al. v. City of Keokuk et al., 224 Iowa 718, l. c. 733, 277 N. W. 291. In that case we said:

"On the proposition of duality, * * * courts are not in accord, but the decided weight of authority is against the appellants' contention. The majority rule is well stated in the case of State v. Snyder, 129 Ohio St. 206, 194 N. E. 415, as follows: 'According to the great weight of authority, expressions such as the one involved here do not express duality of purpose [the expression referred to reads "acquiring *or* constructing waterworks"]'." (Citing a large number of cases.) For an exhaustive annotation of this question, see 5 A. L. R. 538.

This question was fully considered in Keokuk Water Works Co. et al. v. City of Keokuk et al., supra, and we are controlled thereby. The conclusion reached in that case was that the election was not void for duality. We are satisfied with that conclusion and deem it unnecessary to give any further consideration to this question here. We find no error in the lower court's holding that the election was not void for duality.

██ IV. Appellants also contend that the election was

nullified by false and fraudulent representations made by city officials and others during the campaign for the purpose of carrying the proposition to construct a municipally owned plant. This identical question was also passed upon by us in Keokuk Water Works Co. et al. v. City of Keokuk et al., supra, 224 Iowa 718, 277 N. W. 291.

The representations alleged to have been made in that case were substantially similar to those alleged to have been made in this. In that case we held that the representations alleged to have been made were not sufficient to nullify the election. Our ruling in this case upon that question is also controlled by that.

As this question was fully discussed and considered in that case, we deem it unnecessary to give it any further consideration here. We are, therefore, impelled to hold there was no error in the lower court's action in failing to hold the election invalid for duality.

■■■ V. Appellants also contend that the election was invalid because it was not carried by an affirmative vote of sixty per cent as required by section 1171-d4 of the Code. The record in this case shows that the proposition to establish a municipal plant was carried by a majority of those voting at the election. As this is all that is required by section 6131 of the Code, appellants' contention is not well founded. Section 6131, Code of 1931, authorizes the establishment, construction, or acquisition of a municipal plant when a majority of the electors voting at the election vote in favor of the municipal plant.

We have also ruled upon this point in the case of Keokuk Water Works Co. et al. v. City of Keokuk et al., supra, 224 Iowa 718, 277 N. W. 291. In that case we held that elections under the Simmer law are controlled by chapter 312 (§6127 et seq.) of the Code, and that the requirements of chapter 319 (§6238 et seq.) are not applicable. Our ruling upon this question is also controlled by the ruling in the case of Keokuk Water Works Co. et al. v. City of Keokuk et al., supra. We find no error in the lower court's action in failing to hold the election invalid for want of a sufficient vote.

■■■ VI. Appellants also contend that the court erred in denying the injunction because an expenditure in excess of $917,000 for the construction of the plant is in violation of the special statutory restriction and void. The record shows that the proposition submitted to the voters stated that the maximum

amount to be expended is $917,000. The proposition stated on the ballot was that: "the maximum amount which may be expended for the establishment, * * * of such plant shall be $917,000 to be paid for out of the future earnings of said plant, and as provided by Sections 6134-d1 to 6134-d7."

Appellants contend that the maximum amount which may be expended on the plant is not stated in the ballot because the amount stated on the ballot does not include the amount of the grant received from the government.

The record shows that, if the grant from the government is received, the *cost* of the plant will exceed $917,000. The record also shows, however, that if no money is received from the government grant, the maximum *cost* of the plant will not exceed $917,000. The record shows, however, that the total *cost* of the plant will not exceed $917,000 plus the amount received from the government.

It may be that if the free grant received from the government is used in the construction of the plant, the total *cost* of the plant will exceed $917,000; but appellees contend that the amount stated on the ballot as being "the maximum amount to be expended" does not mean the total and entire *cost* of the plant where additional funds have been given to the city, free of charge, for the purpose of assisting the city in the construction of the plant. They contend that the city can legally receive such additional funds from other sources as a gift, and build the plant so long as the additional cost will not be paid out of the future earnings of the plant. Appellees, therefore, contend that the words, "the maximum amount which may be expended for the establishment * * * of such plant," under the Simmer law, means the maximum amount that may be expended *out of the future earnings of the plant*.

We have also ruled upon this question in the case of Keokuk Water Works Company et al. v. City of Keokuk et al., 224 Iowa 718, 277 N. W. 291. In that case we held that the provision of section 6134-d3 stating that "the maximum amount which may be expended for the establishment * * * of such plant," means the maximum amount that may be expended out of the earnings of the plant and does not refer to the *total cost* of the plant where the cost of the plant in excess of $917,000 is paid out of a free grant from the government.

In that case we also held that the city may legally receive

a grant or gift from the government for the purpose of aiding in the construction of the plant. The authority granted to the city at the election does not prevent the city from accepting funds as a free gift to be devoted towards the cost of establishing a municipal plant in excess of the amount stated on the ballot. The power of municipalities to accept gifts is expressly given by statute in this state.

Section 10188 provides:

":Counties, cities, towns, * * * and school corporations, are authorized to take and hold property, real and personal, by gift and bequest; and to administer the same through the proper officer in pursuance of the terms of the gift or bequest."

This statute has been so construed in the following cases: Liggett v. Abbott, 192 Iowa 742, 185 N. W. 569; Wright v. Board of Education, 106 Kan. 469, 188 P. 439; Robertson v. Kansas City, 143 Kan. 726, 56 P. 2d 1032; Iowa Southern Utilities Co. v. Lamoni, D. C., 11 Fed. Supp. 581. The United States Supreme Court has also recently held that a grant or donation from the federal government to municipalities for the purpose of aiding in the construction of municipal electric light and power plants is valid. Alabama Power Company v. Harold L. Ickes, Administrator of Public Works, 58 S. Ct. 300, 82 L. Ed. 374, cases Nos. 84 and 85, filed January 3, 1938.

Our ruling on this question is controlled by our ruling in Keokuk Water Works Co. et al. v. City of Keokuk, supra. As this question is quite fully and exhaustively considered in our opinion in that case, written by Justice Hamilton, we deem it unnecessary to enter into a further discussion of the question here. We find no error in the ruling of the trial court on this question.

Other errors are alleged. Some have been considered in connection with other branches of this opinion. All others have been carefully considered, but we find no merit therein.

For the reasons herein expressed, the judgment of the lower court is affirmed in all respects except as to appellants' right to bring this action in equity, as discussed in division I of this opinion.

The judgment of the lower court is therefore modified insofar as it relates to the error complained of in division I hereof,

and is affirmed in all other respects. The judgment is therefore affirmed and remanded with instructions to enter a decree in harmony herewith.—Modified and affirmed with instructions.

STIGER, C. J., and MITCHELL, ANDERSON, DONEGAN, HAMILTON, and MILLER, JJ.. concur.